# State of Vermont v. Gerald P. Doucette

[470 A.2d 676]

No. 52-80

Present: Billings, C.J., Hill and Underwood, JJ., and Keyser and
Larrow, JJ. (Ret.), Specially Assigned

Opinion Filed November 1, 1983

576

*John J. Easton, Jr.,* Attorney General, *Susan R. Harritt,* Assistant Attorney General, *Jay Hindman,* Law Clerk (On the Brief), Montpelier, and *James D. McKnight,* Orange County State's Attorney, Chelsea, for Plaintiff-Appellee.

*Welch and Graham,* White River Junction, *Andrew B. Crane,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant-Appellant.

Hill, J. Defendant Gerald P. Doucette appeals his second degree murder, felony murder, and grand larceny convictions for the slaying of Wayland Austin and the larceny of Mr. Austin's truck. We affirm his convictions.

Wayland Austin's body was found buried under some hay in a remote, wooded area of Tunbridge, Vermont. Austin's death was caused by three gunshot wounds from bullets fired at close range into the back of his head. Austin was driving his truck when he was last seen alive, and the defendant was his passenger at the time. Later that same day, the defendant arrived with Austin's truck at his sister's home in Massachusetts. The murder weapon was identified by the defendant's friend Mark Marini as the gun Marini had loaned to the defendant. The gun was in the defendant's possession while he was in Ver-

mont, and was recovered from the defendant's sister's home pursuant to a search warrant executed in Massachusetts.

## I.

We first address the defendant's contention that Vermont's felony murder rule violates his right to due process under the Fourteenth Amendment of the United States Constitution and Chapter I, Article 10 of the Vermont Constitution. Vermont's felony murder rule is contained in the statute covering murder, 13 V.S.A. § 2301. The rule provides that a murder "committed in perpetrating or attempting to perpetrate arson, sexual assault, aggravated sexual assault, robbery or burglary" is murder in the first degree. The defendant claims that the felony murder rule allows the prosecution to avoid proving two essential elements of the crime of first degree murder, premeditation and malice aforethought, by creating an irrebuttable presumption imputing those elements. The creation of this presumption, claims the defendant, violates the due process requirements established by the United States Supreme Court in *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975). In *Mullaney* the Court held that a defendant is denied due process if the State is relieved of the burden of proving the element of malice aforethought beyond a reasonable doubt in a murder prosecution. *Id.* at 704. See *State* v. *Dusablon*, 142 Vt. 95, 97–98, 453 A.2d 79, 81 (1982) ; *State* v. *Gokey*, 136 Vt. 33, 38, 383 A.2d 601, 604 (1978).

This Court has never addressed the issue of the State's burden of proof in a prosecution for felony murder under 13 V.S.A § 2301. The felony murder doctrine has had a long and controversial history both in the United States and in England, where it originated. We will examine the doctrine's history as well as its rationale in order to address the issue raised by the defendant in this case.

### A. History of the Felony Murder Doctrine in England

At early common law, a person who caused a death while perpetrating a felony was guilty of murder, regardless of the actual intent of the offender, the dangerousness of the felony or the likelihood that death might result. W. LaFave & Scott, Criminal Law 545 (1972). At the time the felony murder rule

developed, very few crimes were felonies, and those that were felonies were punishable by death; therefore, it made no difference whether a person was sentenced to death for the homicide or for the underlying felony. See *Commonwealth* v. *Redline*, 391 Pa. 486, 494, 137 A.2d 472, 476 (1958); W. LaFave & A. Scott, *supra*, at 546 n.4. For this reason, the felony murder rule went unchallenged during the early part of its history. *People* v. *Aaron*, 409 Mich. 672, 695–96, 299 N.W.2d 304, 310 (1980).

As the common law developed, many more crimes became felonies, and many of these, such as tax evasion, larceny, and embezzlement, were not violent and did not involve a likelihood of causing death. W. LaFave & A. Scott, *supra*, at 545–46. Nevertheless, the common law felony murder doctrine imputed an intent to murder if a homicide occurred, even accidentally, during the perpetration of any of these felonies. *Id.* By the nineteenth century, English commentators were criticizing the felony murder rule as too severe, see *People* v. *Aaron, supra,* 409 Mich. at 697, 299 N.W.2d at 309–12, and English case law was restricting the rule. *Id.*, 299 N.W.2d at 311–12. Finally, in 1957, England abolished the felony murder rule. English Homicide Act, 1957, 5 and 6, Eliz. 2, c.11, § 1.

## B. Felony Murder in the United States

Two states—Hawaii and Kentucky—have specifically abolished the felony murder rule. Hawaii Rev. Stat. § 707.701 (1976); Ky. Rev. Stat. § 507.020 (Supp. 1982). In addition, Ohio has effectively abolished the rule by defining as involuntary manslaughter a death caused by the commission or attempted commission of a felony. Ohio Rev. Code Ann. §§ 2903.01, 2903.04 (Page 1982). Manslaughter, by definition, does not require malice. Since the felony murder rule's main function is to supply malice, the rule is useless in Ohio. The majority of the other states, including Vermont, have attempted to ameliorate the harshness of the rule by limiting its applicability to "violent" felonies involving a risk that death will occur during the natural course of the felony. W. LaFave & A. Scott, *supra*, at 547. Thus, Vermont has limited its felony murder rule to the crimes of robbery, sexual assault, aggravated sexual assault, arson and burglary. 13 V.S.A. § 2301.

Some state legislatures have imposed additional restrictions. Several states have reduced the punishment for felony murder by downgrading the crime from first degree murder to second or third degree murder. See, e.g., Alaska Stat. § 11.41.110(a) (3) (1978); N.Y. Penal Law § 125.25(3) (McKinney 1975); Pa. Stat. Ann. tit. 18, § 2502(b) (Purdon 1983); Wis. Stat. Ann. § 940.02(2) (West 1982). Other statutes require that the defendant have *some* degree of culpable mental state beyond the intent to commit the underlying felony. See, e.g., Ark. Stat. Ann. § 41.1501(1) (a) (1977) (defendant must manifest "extreme indifference to the value of human life" in causing the death); Del. Code Ann. tit. 11, § 636(a) (6) (Supp. 1982) (requires "criminal negligence"); La. Rev. Stat. Ann. § 14:30 (West Supp. 1983) (requires "specific intent to kill or to inflict great bodily harm"); N.H. Rev. Stat. Ann. §§ 630:1-a, 630:1-b (1974) (to constitute first degree murder, death must be caused "knowingly," and to constitute second degree murder, death must be caused "recklessly under circumstances manifesting an extreme indifference to the value of human life"). Some legislatures also have established affirmative defenses to the felony murder rule. See, e.g., Alaska Stat. § 11.41.115(b) (1978); Colo. Rev. Stat. § 18-3-102(2) (1978); Conn. Gen. Stat. Ann. § 53a-54c (West Supp. 1983); Me. Rev. Stat. Ann. tit. 17-A, § 202 (West 1983); N.J. Rev. Stat. Ann. § 2C:11-3a. (1982); N.Y. Penal Law § 125.25(3) (McKinney 1975); N.D. Cent. Code § 12.1-16-01(3) (Supp. 1981); Or. Rev. Stat. § 163.115 (1981); Wash. Rev. Code Ann. § 9A.32. 030(c) (1977) (affirmative defense that defendant did not commit or cause homicidal act; was not armed with deadly weapon; or had no reasonable grounds to believe co-felon was armed or intended to engage in conduct likely to result in death or serious injury).

In addition to legislative action, judicial decisions in many jurisdictions have limited the scope of the common law felony murder rule. Such limitations have included requirements that the felony be inherently dangerous, see, e.g., *Wade* v. *State,* 581 P.2d 914 (Okla. Ct. App. 1978); *Commonwealth* v. *Bowden,* 456 Pa. 278, 309 A.2d 714 (1973); *People* v. *Phillips,* 64 Cal. 2d 574, 414 P.2d 353, 51 Cal. Rptr. 225 (1966), that the killing be a proximate cause of the felonious act, see, e.g., *Wade* v. *State, supra; State* v. *Mauldin,* 215 Kan. 956, 958, 529 P.2d

124, 126 (1974) ; *People v. Scott,* 29 Mich. App. 549, 185 N.W.2d 576 (1971), that the time period during which the felony is in the process of being committed be narrowly construed, see, e.g., *State v. Montgomery,* 191 Neb. 470, 215 N.W.2d 881 (1974) ; *State v. Opher,* 38 Del. 93, 188 A. 257 (1936) ; *People v. Walsh,* 262 N.Y. 140, 186 N.E. 422 (1933), and that the underlying felony be independent of the homicide, see, e.g., *People v. Ireland,* 70 Cal. 2d 522, 450 P.2d 580, 75 Cal. Rptr. 188 (1969) ; *People v. Moran,* 246 N.Y. 100, 158 N.E. 35 (1927). See also *Aaron, supra,* 409 Mich. at 699–701, 299 N.W.2d at 312–13; ALI Model Penal Code § 201.2 comment 4, at 37 (Tent. Draft No. 9, 1959). Many of these court-imposed limitations on the common law felony murder rule have subsequently been codified by statute. See, e.g., Ill. Ann. Stat. ch. 38, § 9-1 (Smith-Hurd Supp. 1983) ; Iowa Code Ann. § 707.2 (West 1979) ; Minn. Stat. Ann. § 609.185 (West Supp. 1983) (underlying felony must be "forcible" or violent) ; Ohio Rev. Code Ann. § 2903.04 (Page 1982) (felon's act must be proximate cause of death) ; Me. Rev. Stat. Ann. tit. 17-A, § 202 (1983) (death must be a reasonably foreseeable consequence of commission of felony) ; see generally *Aaron, supra,* 409 Mich. at 705, 299 N.W.2d at 315.

## C. Criticism of the Felony Murder Rule

The rationale for the felony murder rule, according to La-Fave and Scott, is that the defendant is a "bad person" because he or she is committing a felony, so society should not concern itself with the fact that the result accomplished (a death) may have been very different from the result the person actually intended. W. LaFave & A. Scott, *supra,* at 560. This rationale, however, violates one of the criminal law's most basic principles : a person is not criminally liable for causing a bad result if he or she did not have some culpable mental state with respect to that result. See *Aaron, supra,* 409 Mich. at 708, 299 N.W.2d at 316–17 (citing Gegan, *Criminal Homicide in the Revised New York Penal Law,* 12 N.Y.L.F. 565, 586 (1966) ) ; W. LaFave & A. Scott, *supra,* at 560. The United States Supreme Court has emphasized repeatedly the importance of this principle. See, e.g., *Morissette v. United States,* 342 U.S. 246, 250 (1952) ("The contention that an injury can amount to a crime only when inflicted by intention . . . is as universal and

persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."). See also *Mullaney* v. *Wilbur, supra,* 421 U.S. at 697–98.

The common law felony murder doctrine violates this basic principle by holding liable for murder a person whose felonious act results in a homicide, regardless of whether that homicide occurred intentionally, recklessly, negligently, or accidentally. *Aaron, supra,* 409 Mich. at 708–09, 299 N.W.2d at 317. The felony murder rule " 'erodes the relation between criminal liability and moral culpability.' " *Id.* at 708, 299 N.W.2d at 317 (quoting *People* v. *Washington,* 62 Cal. 2d 777, 783, 402 P.2d 130, 134, 44 Cal. Rptr. 442, 446 (1965)), and therefore does not accord with the principles underlying our modern criminal justice system. Thus, in an analogous context, our evidentiary rules usually exclude evidence of a defendant's prior convictions and past bad acts in order to guard against the possibility that the trier of fact will reason that the defendant should be liable merely because he or she is a "bad person." See *Aaron, supra,* 409 Mich. at 710, 299 N.W.2d at 317–18 (citing Turner, *The Mental Element in Crimes at Common Law,* 6 Cambridge L.J. 31, 43 (1938)).

## D. The Felony Murder Rule in Vermont

As noted above, the tendency among courts and legislatures today is to limit the common law felony murder rule in order to restrict its harshness. We find that the Vermont Legislature has not merely codified the common law felony murder rule in 13 V.S.A. § 2301. First, Vermont has limited the rule to five enumerated felonies. In addition, the Legislature also has limited the rule to *murders,* not merely *killings,* committed during the perpetration or attempted perpetration of one of those felonies:

> *Murder* . . . committed in perpetrating or attempting to perpetrate arson, sexual assault, aggravated sexual assault, robbery or burglary, shall be murder in the first degree.

13 V.S.A. § 2301 (emphasis added).

The statute does not define murder; it merely establishes the degree of punishment for a murder committed in a

certain manner. This Court has held that in order to constitute "murder" a homicide must have been committed with "malice aforethought." *State* v. *Battick*, 133 Vt. 558, 561, 349 A.2d 221, 223 (1975). "Malice" may be defined as an intention to kill, an intention to do great bodily harm, or a wanton disregard of the likelihood that one's behavior may naturally cause death or great bodily harm. See *Aaron, supra,* 409 Mich. at 728, 299 N.W.2d at 326; 40 C.J.S. *Homicide* § 14; W. LaFave & A. Scott, *supra,* § 67. Thus, before the felony murder rule becomes applicable to a homicide, the prosecution must show that the killing was committed with malice; the rule does not apply if the killing was done accidentally or unintentionally. To convict a person of felony murder, the jury must find, beyond a reasonable doubt, that the killing was done with malice during the perpetration or attempted perpetration of one of the five enumerated felonies. To find malice a jury may take into consideration the nature of the felony and the facts and circumstances surrounding the killing and the commission of the felony. Malice may be indicated from evidence presented that the defendant intentionally set in motion a chain of events likely to cause death or great bodily injury, or acted with extreme indifference to the value of human life. ALI Model Penal Code, *supra.* However, a jury may not find malice merely from an intent to commit the underlying felony.

The experience of jurisdictions that require malice in such situations indicates that in most felony murder prosecutions the outcomes reached are the same as when findings of malice were not required. See *Aaron, supra,* 409 Mich. at 729, 299 N.W.2d at 327–28. However, requiring malice rests those murder convictions on principled grounds and avoids fundamentally unjust convictions for accidental killings.

### E. Vermont's Felony Murder Rule as Applied to this Case

The defendant argues that Vermont's felony murder rule is unconstitutional because it imputes malice from the intent to commit the underlying felony. Since we have found that 13 V.S.A. § 2301 requires the prosecution to prove murder, and therefore malice, beyond a reasonable doubt, we reject the defendant's argument.

■■ The defendant also contends that Vermont's felony

murder rule impermissibly imputes premeditation. This argument also is without merit. The defendant incorrectly assumes that premeditation is a required element of all three categories of murder created by 13 V.S.A. § 2301 (murder by poison or lying in wait, deliberate or premeditated murder, and felony murder) because the statute labels them murder in the "first degree." However, the purpose of establishing degrees of a crime such as murder is merely to graduate punishment. W. La-Fave & A. Scott, *supra,* at 562. Thus, categorizing the types of murder listed in 13 V.S.A. § 2301 as "first degree" murders was a legislative determination that those murders should be punished more severely than other kinds of murder. Premeditation is not a required element of felony murder. *State v. Battick, supra,* 133 Vt. at 561, 349 A.2d at 223 (murder committed while perpetrating a felony "is murder in the first degree without the necessity of any finding of premeditation"). Therefore, Vermont's felony murder rule does not impermissibly impute premeditation, as the defendant contends.

We now apply the requirements for finding felony murder under 13 V.S.A. § 2301 to the facts of this case. The trial judge properly instructed the jury that in order to convict the defendant of felony murder it first must find that the State proved *murder* beyond a reasonable doubt. The judge also explained to the jury that it must find malice in order to find murder. The jury then returned a verdict of guilty on both the second degree murder and felony murder counts. We hold that the State produced ample evidence to support the jury's finding of malice. The victim was killed by two or three bullets shot at close range into the back of his head. A jury could find that this type of killing clearly supports a finding of intent to kill or do great bodily harm, or of wanton disregard of the likelihood of causing death or great bodily harm by one's behavior. The State also produced sufficient evidence to prove, and the jury so found, that the defendant killed the victim while perpetrating or attempting to perpetrate a robbery, which is one of the felonies enumerated in 13 V.S.A. § 2301. We therefore affirm the defendant's felony murder conviction.

## II.

The defendant claims that the search warrant issued to search his sister's house in Massachusetts, which resulted in

the discovery of the murder weapon in this case, is invalid because it was not issued by a neutral and detached magistrate. First, the defendant argues that the officer who issued the search warrant was not authorized to do so by Massachusetts law. Section 33 of Chapter 218 of the Massachusetts General Laws provides, in pertinent part, that:

> A clerk, assistant clerk, temporary clerk or temporary assistant clerk, may . . . issue . . . search warrants . . . . No other person, except a judge, shall be authorized to issue . . . search warrants . . . .

Mass. Gen. Laws Ann. ch. 218, § 33 (West 1981).

The officer who issued the search warrant stated that his title was "clerk pro tempore" on the affidavit in support of an application for the warrant and "magistrate" on the warrant itself. Neither of these titles is listed in § 33. However, Black's Law Dictionary defines "pro tempore" as "[f]or the time being; temporarily; provisionally." Black's Law Dictionary 1101 (rev. 5th ed. 1979). Thus, a "clerk pro tempore" is merely another expression for "temporary clerk," a title that *is* listed in § 33. The Massachusetts Supreme Judicial Court has affirmed the authority of court clerks to issue search warrants under § 33. *Commonwealth* v. *Penta*, 352 Mass. 271, 273, 225 N.E.2d 58, 59–60 (1967). Therefore, we find that § 33 authorizes clerks "pro tempore," such as the official involved here, to issue search warrants. To interpret § 33 narrowly and literally, as defendant would have us do, would do an injustice to the spirit of the Massachusetts law.

■ The defendant also claims that the State failed to show that the clerk pro tempore involved here was duly appointed by a justice of the Massachusetts Supreme Judicial Court, as required by § 9 of Chapter 218 of the Massachusetts General Laws. We reject this argument. At trial, the State introduced copies of Massachusetts General Laws and relevant certificates that were sufficient to show that the officer was duly appointed and authorized to issue search warrants. The defendant offered nothing to contravene this evidence.

■ Finally, the defendant argues that the search warrant is invalid because the Massachusetts law authorizing as-

sistant and temporary clerks to issue warrants, § 33, *supra*, violates the Fourth Amendment to the United States Constitution. The Fourth Amendment requires warrants to be issued only "upon probable cause." The defendant claims that § 33 improperly allows persons untrained in the law to issue search warrants, because such persons are incapable of making determinations of probable cause in felony cases such as this one. In *Shadwick* v. *City of Tampa*, 407 U.S. 345 (1972), the United States Supreme Court declared that "it has never been held that only a lawyer or judge could grant a warrant, regardless of the court system or the type of warrant involved." *Id*. at 348. Thus, the issuing official in this case was not required to be legally trained. The Court in *Shadwick* stated that to issue warrants, a person must be neutral and detached and must be capable of determining whether probable cause exists for the required search. *Id*. at 350. The defendant has produced no evidence proving that the issuing officer in this case was not neutral and detached or was not capable of understanding probable cause. Without such proof, we reject the defendant's claim.

### III.

The defendant next claims that the search warrant was issued without probable cause. First, the defendant argues that the affidavit supporting the issuance of the search warrant did not establish that Mark Marini, the defendant's friend and the informant, was a credible informant, or that the information he provided regarding the location of the murder weapon was reliable. In support of his claim, the defendant cites *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969), which held that when information in an affidavit is supplied by an informant (as opposed to a police officer), the affidavit must establish that the informant is credible and that the information he or she supplied is reliable. However, in the 1983 case of *Illinois* v. *Gates*, — U.S. —, 103 S. Ct. 2317 (1983), the United States Supreme Court held that rigid application of the credibility and reliability tests of *Aguilar* and *Spinelli* in determining whether probable cause exists improperly focuses on "isolated issues" rather than on the "totality of the circumstances." *Id*. at —, 103 S. Ct. at 2330–31. Therefore, the Court decided to abandon the credibil-

ity and reliability "tests" established by *Aguilar* and *Spinelli*. *Id.* at —, 103 S. Ct. at 2332. Instead, the Court held that issuing officials must use a commonsense approach taking into consideration the totality of the circumstances in determining whether probable cause to issue warrants exists.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at —, 103 S. Ct. at 2332.

Although *Illinois* v. *Gates* was decided after this case was tried, we have adopted the common law rule that changes in the law will be given effect while a case is on direct review. *State* v. *Shattuck*, 141 Vt. 523, 529, 450 A.2d 1122, 1125 (1982). The ruling in *Gates* certainly is a "change in law," since it rejected the *Aguilar* and *Spinelli* tests for determining probable cause. Thus, the test announced in *Gates* is applicable in this case. See *State* v. *Piper*, 143 Vt. 468, 471, 468 A.2d 554, 555 (1983).

A reviewing court must pay great deference to an issuing official's determination of probable cause. *Gates, supra*, — U.S. at —, 103 S. Ct. at 2331. The standard of review is that the requirements of the Fourth Amendment are satisfied as long as the official had a "substantial basis" for making his or her determination. *Id.*, 103 S. Ct. at 2331.

Information contained in the affidavit in this case established that the victim had been killed by thirty-two caliber bullets; that an arrest warrant charging the defendant with the murder had been issued; that Mark Marini had loaned two thirty-two caliber guns (which were described in the affidavit) to the defendant prior to the date of the murder; that Marini stated that he saw the guns, together with other personal property belonging to the defendant, at the defendant's sister's home on the day after the murder; and that Marini stated that the defendant's sister told Marini, about a week after the murder, that the two guns were at her home.

The affidavit contained ample details and underlying circumstances to enable the issuing official to determine that probable cause to issue a search warrant existed. The victim was killed by bullets from a thirty-two caliber gun, the same caliber of the guns that Marini said he loaned to the defendant. Marini claimed that he personally saw the guns at the defendant's sister's home. It was reasonable for the issuing official to have concluded that this statement was reliable. First, the statement was based on Marini's firsthand perception, not on someone else's conclusion. See *State* v. *Barrett*, 132 Vt. 369, 373, 320 A.2d 621, 624 (1974). Also, as the owner of the guns, Marini presumably could recognize his own guns when he saw them. Furthermore, since the affidavit stated that the defendant's sister was "personally known" to Marini, the issuing official had a reasonable basis for concluding that Marini had sufficient reason to visit at the defendant's sister's house and to talk with her about the guns. In addition, the issuing magistrate reasonably could have concluded that the defendant's sister's home was a convenient place for the defendant to have hidden the guns. Cf. *State* v. *Moran*, 141 Vt. 10, 17, 444 A.2d 879, 882 (1982) (court found that "[c]ommon sense suggests it is reasonable to conclude" that a robber would conceal the instrumentalities and fruits of a crime at his or her residence). Thus, we conclude that the official had a substantial basis for finding probable cause.

The defendant claims, however, that there was no probable cause to issue the search warrant because the affidavit contained multiple hearsay without a substantial basis for crediting the hearsay evidence. This argument is without merit. Hearsay evidence may be the basis for the issuance of a search warrant as long as there is a substantial basis for concluding that the hearsay was credible. *Gates, supra*, — U.S. at —, 103 S. Ct. at 2334; *Jones* v. *United States*, 362 U.S. 257, 269 (1960). As shown above, there were ample facts established in the affidavit to credit Marini's statements, and the issuing official had a substantial basis for so concluding.

The defendant also argues that the affidavit was insufficient because it did not establish the exact date when Marini loaned the two guns to the defendant. This claim also

must fail. It has been held that an affidavit that omits altogether a statement regarding the time of the occurrence of the facts relied upon is insufficient. *Rosencranz* v. *United States,* 356 F.2d 310, 315–16 and n.3 (1st Cir. 1966) ; *Staker* v. *United States,* 5 F.2d 312 (6th Cir. 1925). However, this affidavit *did* state that Marini loaned the guns to the defendant "prior to" the murder. Thus, the affidavit indicated that the defendant had the means to commit the crime on the date of the murder. The exact date of the loan is irrelevant.

■ Finally, the defendant claims that the affidavit did not contain sufficient specific facts to allow for a determination of probable cause. As we have discussed above, this affidavit contained much more than mere "conclusory statements." *Gates, supra,* — U.S. at —, 103 S. Ct. at 2332. Thus, we reject this claim also, and conclude that the search warrant was based upon probable cause as required by the Fourth Amendment and was therefore properly issued.

## IV.

■ The defendant's next contention is that the trial judge's instruction to the jury on the issue of intent unconstitutionally shifted the burden of proving intent to the defendant. The defendant did not object to the instruction at trial, so this Court will reverse on appeal only if the instruction contained plain error. *State* v. *Darling,* 141 Vt. 358, 449 A.2d 928 (1982) ; see V.R.Cr.P. 30.

■ The judge's instruction was as follows :

Intent ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operating of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made òr act done or committed by the defendant, and all other facts and circumstances in evidence [that] indicate his/her state of mind. *It is ordinarily reasonable to infer that a person intends the natural and probable consequences of* [an] *act knowingly done or knowingly committed.* (Emphasis added.)

The instruction in this case is virtually identical to the instruc-

tion that we found to be constitutional in *State* v. *Dusablon,* 142 Vt. 95, 453 A.2d 79 (1982). In *Dusablon,* we held that the charge clearly instructed the jury to consider all the evidence supporting or contradicting the inference that the defendant intended the "reasonable and probable consequences" of his acts. *Id.* at 99, 453 A.2d at 82. Like the charge in *Dusablon,* the charge in this case "left the trier of fact with the freedom to accept or reject the inference." *Id.* Therefore, we hold that there was no error in this instruction.

## V.

The defendant also claims that the trial judge's instruction to the jury that the State has a duty to produce all witnesses who would shed light on the case was a violation of his right to a fair trial because it prejudicially enhanced the prosecution's position. We disagree.

The purpose for this charge is that in criminal cases the State is a neutral party and must attempt to discover whether the accused actually committed the crime; therefore, the State must produce all witnesses who can shed light on the issue. See *State* v. *Slack,* 69 Vt. 486 (1897). In *State* v. *Gates,* 141 Vt. 562, 451 A.2d 1084 (1982), which was decided after this case went to trial, we held that "such instructions should not be given in the future in Vermont criminal trials," *id.* at 571, 451 A.2d at 1088, and that this Court will reverse a conviction if the defense makes a timely objection to such an instruction but the trial judge fails to correct the error. See *State* v. *Mosher,* 143 Vt. 197, 465 A.2d 261 (1983). The defendant in this case, however, failed to object to his instruction at trial, so we will reverse only upon a showing of plain error. *State* v. *Darling, supra;* V.R.Cr.P. 30.

We note first that our ruling in *Gates* was prospective only, so it does not apply to this case. Therefore, we cannot find plain error merely from the fact that the instruction was given. In deciding whether the instruction constituted plain error, we will not view the instruction in isolation, but rather in the context of the entire charge to the jury. *State* v. *St. Amour,* 139 Vt. 99, 102, 422 A.2d 937, 939 (1980). In other parts of the charge in this case the trial judge instructed the

members of the jury that it was for them to decide the credibility of the witnesses. Furthermore, the defendant has not shown that he was prejudiced in any way by the charge. In his brief, the defendant admits that he has no evidence that the jury was influenced by this instruction. His argument is based merely on a "presumed, and not a proved, effect." *Id.* We conclude, therefore, that the defendant has not met his burden of proving plain error.

## VI.

The defendant's final argument is that the trial judge improperly admitted testimony adduced by the State from the defendant's brother-in-law, Paul Canty, concerning possible statements made by the defendant that he had taken money and a wallet from the victim. The defendant claims that since he was not charged with robbery, this testimony was both irrelevant and prejudicial.

We reject the defendant's argument. The defendant did not object to this alleged evidentiary error at trial, so the trial court did not have an opportunity to rule on the issue. Therefore, the defendant's right to object on appeal is waived. *State v. Kasper*, 137 Vt. 184, 200, 204–05, 404 A.2d 85, 92, 94 (1979).

*The judgment of the trial court is affirmed.*