## State of Vermont v. Terrance L. Pelican

[632 A.2d 24]

No. 91-355

Present: **Allen, C.J., Gibson, Dooley, Morse** and **Johnson, JJ.**

Opinion Filed July 23, 1993

Motion for Reargument Denied August 27, 1993

*Howard E. VanBenthuysen*, Franklin County State's Attorney, St. Albans, for Plaintiff-Appellee.

*E.M. Allen*, Defender General, and *Henry Hinton*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Allen, C.J.** Defendant Terrance L. Pelican appeals his voluntary manslaughter conviction, claiming several errors in the court's instructions to the jury. Defendant contends that (1) the court erroneously instructed that the evidence of diminished capacity could defeat proof of malice only, (2) the court erroneously directed the jury to convict defendant if the jury rejected the self-defense theory, (3) the self-defense instruction was incomplete because it did not adequately present the self-defense theory of the case to the jury, (4) the court erroneously directed the jury on how to reconcile conflicting testimony, and (5) the court committed prejudicial error by charging the jury that defendant's flight was evidence of guilt. We affirm.

Defendant and the victim had been friends who lived on the same floor of a hotel. Defendant, the victim, and others had

been drinking alcohol throughout the day and into the evening. Defendant and the victim were involved in an altercation where the victim viciously assaulted defendant. After some time had passed, defendant shot the victim at close range with a shotgun. Immediately after the shooting, defendant fled the scene of the crime. Upon his arrest, defendant was charged with second-degree murder. Defendant asserted the defenses of self-defense and diminished capacity from intoxication.

Defendant's first two contentions—that there was an erroneous diminished-capacity charge and that the trial court erroneously directed the jury to convict him if it rejected the self-defense theory—were not preserved for our review. Defendant failed to make a "succinct recitation of [the] specific itemized objections" following the instruction, as required by V.R.Cr.P. 30. *State v. Wheelock*, 158 Vt. 302, 306, 609 A.2d 972, 975 (1992). Although the diminished capacity claim was mentioned during the charge conference, defendant's attorney did not object following the charge to the jury.

Anticipating this shortcoming, defendant points out that the *Wheelock* decision was handed down after the trial in this case, and to apply it retroactively would be unfair. Defendant claims that his counsel's preservation method comported with practice prevailing at the time. We disagree. Our rule and case law required an objection following the instructions to preserve the issue for appeal. See *State v. Roberts*, 154 Vt. 59, 71, 574 A.2d 1248, 1253 (1990) ("'A claimed error in the jury instructions can be raised on appeal only if, after the delivery of the charge, the aggrieved party made a specific objection, including a clear statement of the matter to which he objects and the grounds of the objection.'") (quoting *State v. Lettieri*, 149 Vt. 340, 342, 543 A.2d 683, 685 (1988)).

■■ Nonetheless, defendant claims that both instructions were plain error. Plain errors are those errors "affecting substantial rights . . . [which are] not brought to the attention of the [trial] court." V.R.Cr.P. 52(b). Plain error exists "only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." *State v. Hoadley*, 147 Vt. 49, 53, 512 A.2d 879, 881 (1986). Plain error doctrine requires "an

appellate court to find that the claimed error not only seriously affected 'substantial rights,' but that it had an unfair prejudicial impact on the jury's deliberations." *United States v. Young*, 470 U.S. 1, 16 n.14 (1985). Prejudice must exist to demonstrate that error undermined fairness and contributed to a miscarriage of justice.

■■ Defendant claims that the court's instruction—that evidence of diminished capacity could defeat only proof of malice, an element of murder, and not intent to kill, an element of voluntary manslaughter—was plain error. When evaluating the sufficiency of jury instructions, we consider the instruction as a whole. See *State v. Valley*, 153 Vt. 380, 398, 571 A.2d 579, 588 (1989). Here, the court instructed that diminished capacity relates to the State's burden of proving that defendant had the ability to form the intent to commit the crime. Additionally, the court had previously charged the jury on the required mental states for murder, voluntary manslaughter, and involuntary manslaughter. Whether defendant's mental capacity to formulate these essential elements was so diminished was properly left to the jury. Thus, the instructions, as a whole, provided sufficient guidance, and the portion of the instruction referring to malice did not have an unfair prejudicial impact on the jury's deliberation.

Defendant also contends that the court's instruction to convict if the jury rejected the theory of self-defense was tantamount to directing a guilty verdict and that this instruction was plain error. Defendant relies primarily on *State v. Camley*, in which this Court held that "a judge's instructions may not direct a verdict of guilty no matter how overwhelming or conclusive the evidence." *State v. Camley*, 140 Vt. 483, 489, 438 A.2d 1131, 1134 (1981). In *Camley*, we held that a misleading jury instruction was cause for a new trial under the plain error standard of review. *Id.* at 489–90, 438 A.2d at 1134. *Camley* is distinguishable from the case at bar because in *Camley* the trial court removed from the jury the option of a general not-guilty verdict. The *Camley* Court focused on the role of the judge in giving jury instructions. The Court noted that Vermont law "restrains a judge from commenting on the evidence in a way which gives undue prominence to any fact, claim or circumstance." *Id.* at 489, 438 A.2d at 1134. The Court concluded that

the judge's failure to expressly mention the possibility of a not-guilty verdict constituted an "impermissible comment." *Id.* at 489–90, 438 A.2d at 1134.

■ In the present case, the court repeatedly instructed the jury of the State's burden of proof beyond a reasonable doubt. The instruction carefully informed the jury about the elements of the crime charged and the lesser-included offenses, and expressly informed the jury that it must acquit if it had a reasonable doubt that defendant was guilty. Read in its entirety, see *State v. Valley*, 153 Vt. at 398, 571 A.2d at 588, the instruction informed the jury that if the jury found that defendant did not act in self-defense, then he was guilty of one of the offenses charged only if its elements were proven. Taken as a whole, the instructions would not have thwarted the jury from returning a general not-guilty verdict. Thus, because defendant has not shown that he was prejudiced, there was no plain error.

■ Next, defendant contends that the self-defense instruction was incomplete because it did not adequately present defendant's self-defense theory to the jury. Specifically, defendant claims that the trial judge incorrectly denied defendant's request to instruct the jury that boots can be considered a deadly weapon which justify using lethal force, and that "renewed passion" could have caused defendant to act in the heat of passion. We disagree on both points because the "trial court is free to choose its own language in phrasing the charge." *State v. Davignon*, 152 Vt. 209, 216, 565 A.2d 1301, 1305 (1989). The instruction will be upheld provided the court instructs on every theory which is fairly put forward by the evidence. *State v. Day*, 149 Vt. 165, 166–67, 540 A.2d 1042, 1043 (1987).

■ Here, the court properly instructed the jury on the issue of self-defense, pointing out that the jury must "determine if it reasonably appeared to the Defendant that he was in danger of death or serious bodily harm." The court also instructed the jury that it must consider whether the force used by the defendant was reasonable from his vantage point and that the jury was to consider the totality of the circumstances. The instruction thus allowed the jury to consider whether the victim's previous assault upon defendant justified defendant's subsequent lethal force. The charge provided ample guidance regarding defend-

ant's claim that lethal force was necessary under the circumstances.

■ Likewise, the jury was given adequate guidance as to the heat-of-passion claim. Defendant does not argue that whatever passion arose from the victim's first attack persisted into the second confrontation. Rather, he argues that his passion was renewed by the second conflict. Thus, under this theory of renewed passion, the proper focus of the jury's consideration would have been the amount of passion present during the second conflict. The trial court carefully explained the concept of sudden passion to the jury in its instructions. The charge properly focused on the possible existence of passion at the time of the offense and the circumstances in which defendant found himself. The instruction on heat of passion provided adequate guidance as to this issue.

■ Defendant's next contention is that the trial judge erroneously charged the jury to reconcile conflicting testimony on the theory that each of the witnesses was sworn to tell the truth. This Court has warned that "[i]nstructions [which] presume that witnesses are truthtellers pass dangerously close to unconstitutional shifts in the State's burden of proof and the presumption of innocence, and threaten to diminish the jury's role as the arbiter of credibility." *State v. Snide*, 151 Vt. 343, 345, 560 A.2d 380, 381 (1989). In *Snide*, however, we upheld a jury instruction that the jury should resolve conflicting testimony on the theory that "all witnesses are presumed to have testified truthfully." *Id.* at 344, 560 A.2d at 381. The instruction was acceptable because "the purpose of the instruction was to guide the jury in resolution of directly conflicting evidence, and was not given as a general means of assessing witness credibility." *Id.* at 345, 560 A.2d at 382. Moreover, the *Snide* jury charge contained repeated instructions describing the State's burden of proof and presumption of innocence.

As in *Snide*, the purpose of the challenged instruction was to guide the jury in resolving directly conflicting testimony, not to direct the jury in assessing witness credibility. The trial judge advised the jury that it could accept or reject each witness's testimony, and that it alone could decide which or what portion of trial testimony was true. Additionally, the jury was in-

structed that a witness's bias, interest in the outcome, opportunity to observe, and demeanor should be considered in evaluating witness credibility. When viewed as a whole, the charge was balanced and fair.

 Defendant's final contention is that the trial court committed prejudicial error by instructing the jury that the defendant's "flight" could be considered as evidence of guilt. The court gave the following instruction:

> Evidence of flight. Members of the jury, you may also consider the evidence of flight by the Defendant. Evidence tending to show flight of the Defendant immediately after the commission of the alleged offense with which he stands charged and for which he is on trial is admissible, and if unexplained, tends to show guilt.

> It is proper for a jury to consider the testimony of the extent of the flight together with the actions and doings of the Defendant tending to characterize it.

> In your consideration of the evidence of flight you should consider fully that there may be reasons for the flight which are fully consistent with innocence. Such reasons might include fear of being apprehended, unwillingness to confront the police, panic, or reluctance to appear as a witness. A feeling of guilt does not necessarily reflect actual guilt.

Defendant argues that this instruction improperly focused the jury's attention on one piece of circumstantial evidence. We reject this claim. It is proper for the jury to consider flight evidence as it tends to show consciousness of guilt. *State v. Dugee*, 101 Vt. 491, 494, 144 A. 689, 690 (1929). In *State v. Billado*, 141 Vt. 175, 188, 446 A.2d 778, 785 (1982), we held that "[g]iving an instruction on flight is fully consistent with the law in this state." Evidence of flight, however, is generally considered to have little probative value, and is not sufficient by itself to support a conviction. *State v. Unwin*, 139 Vt. 186, 193, 424 A.2d 251, 255 (1980).

The evidence showed that, immediately after the shooting, defendant ran out of the hotel. He proceeded to a friend's house to borrow money for a cab. Defendant then traveled over a frozen river to a motel where he took a cab to another friend's house. At the second friend's house, unbeknownst to the friend,

defendant slept in a parked car in the garage. Defendant had a small-caliber hand gun in his possession throughout his flight. The next day, defendant turned himself in to the Vermont State Police. The flight instruction was supported by the evidence presented at trial and was not prejudicial.

*Affirmed.*

**Morse, J.,** concurring. Although I agree with the Court's result, I do not think any error, let alone plain error, was committed under point II, and I have a basic disagreement with the analysis in point III.

In point II, defendant claims that the trial court was wrong to instruct the jury that diminished capacity from intoxication served only to "negate" malice. But, defendant's position that diminished mental capacity can also defeat the intent-to-kill element necessary to prove voluntary manslaughter is simply contrary to our case law.

We recently instructed that "malice" should no longer be used to describe the mental state required for murder. *State v. Johnson,* 158 Vt. 508, 519, 615 A.2d 132, 138 (1992) (court should charge "appropriate states of mind required for each type of murder" rather than "describing malice as a requisite element of murder"). Second degree murder requires "'an intention to kill, an intention to do great bodily harm, or a wanton disregard of the likelihood that one's behavior may naturally cause death or great bodily harm.'" *Id.* at 517–18, 615 A.2d at 137 (quoting *State v. Doucette,* 143 Vt. 573, 582, 470 A.2d 676, 682 (1983)). Although we have spoken previously of diminished capacity as "negating" malice, the correct way of explaining its effect is as a defense mitigating the degree of homicide from murder to voluntary manslaughter. Like second degree murder, voluntary manslaughter is an intentional killing, but, unlike second degree murder, it is "committed under extenuating circumstances that would mitigate, but not justify, the killing." *Id.* at 518–19 n.4, 615 A.2d at 138 n.4.

"Diminished" is not "eliminated." It would be improper for the jury to acquit defendant because his capacity to develop a specific intent to kill was diminished. Rather, the diminished capacity defense operates only to lessen the culpability for the killing, not excuse it altogether. See *State v. Wheelock,* 158 Vt.

302, 309, 609 A.2d 972, 976 (1992) ("[i]ntoxication may be considered in reducing the culpability of a crime from, for example, murder to manslaughter, but under a claim of self-defense, it cannot excuse a defendant from any criminal culpability").

In point III, the Court distinguishes this case from *State v. Camley*, 140 Vt. 483, 438 A.2d 1131 (1981), because in *Camley* the trial court never told the jury it could acquit the defendant, while here the trial court told the jury it must acquit defendant if it had a reasonable doubt that he was guilty. In the Court's words, *Camley* "removed from the jury the option of a general not-guilty verdict." I do not think *Camley* can be reasonably distinguished on that basis.

Here, the trial court instructed the jury, "Should you find that the state proved beyond a reasonable doubt that the defendant did not act in self-defense, *you must find the defendant guilty of one of the offenses charged.*" (Emphasis added). That instruction plainly "removed from the jury the option of a general not-guilty verdict." The court gave an unqualified instruction that the jury must convict defendant of homicide if it did not find he acted in self-defense. Given the nature of the defense, the jury could not conclude the instruction meant otherwise. This case was tried as if a general not-guilty verdict was not an option. The entire defense rested on a choice: either defendant was not guilty due to self-defense or, failing that, he was guilty only of manslaughter. The trial focused on three factual issues: Did defendant kill the victim in self-defense, or, if not, did he kill in the heat of passion or with diminished mental capacity due to intoxication. A factual issue decidedly not in dispute was whether defendant killed the victim.

Since it appeared in 1981, *Camley* has been significantly eroded, and we should now overrule the doctrine of plain error per se. A recent case, *State v. Roy*, 151 Vt. 17, 557 A.2d 884 (1989), was a harbinger of *Camley's* demise.

The *Roy* trial court, with defendant's apparent approval, had not instructed the jury that knowledge that the victim of an assault was a police officer was an element of the charged crime, simple assault on a police officer. We stated that "other aspects of the charge . . . cover[ed] the omission at least in part . . . [and] '[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" *Id.* at .

22–23, 557 A.2d at 888 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). In addition, the Court criticized the creation of categories of plain error per se, preferring instead traditional case-by-case plain error analysis:

> [W]hen we have examined cases where there is no objection below, we have consistently required a showing of plain error. This Court has not found that some errors are plain per se. Most recently in *State v. Duff*, 150 Vt. 329, 554 A.2d 214 (1988), we decided a case where the defendant admitted committing a homicide but argued that he was guilty only of voluntary manslaughter by virtue of diminished capacity. The jury convicted the defendant of murder after the trial judge misdefined the elements of the crime of voluntary manslaughter by adding an element that was not part of the crime. This Court analyzed the charge error under the traditional plain error test although the practical effect of the error was to omit or misdefine an essential element of murder, the crime of which the defendant was convicted.
>
> We believe it would be bad policy to create a category of errors which are plain per se.

*Id.* at 23, 557 A.2d at 888.

Plain error per se is inconsistent with V.R.Cr.P. 52(b) ("[p]lain errors . . . *may* be noticed") (emphasis added), which emphasizes the Court's discretion rather than per se rules. See also *State v. Weeks*, 160 Vt. 393, 400, 628 A.2d 1262, 1266 (1993) (applying plain error rule "involves appellate discretion and weighing of all relevant factors," particularly prejudice to defendant); *United States v. Olano*, — U.S. —, —, 113 S. Ct. 1770, 1778 (1993) (although some categories of plain error per se may exist, "normally . . . defendant must make a specific showing of prejudice" to qualify for relief under Rule 52(b)). We should resort to a per se analysis only when we are unable to do a meaningful particularized analysis. Cf. *Sullivan v. Louisiana*, — U.S. —, —, 113 S. Ct. 2078, 2081–82 (1993) (constitutional errors are reversible per se only when they affect framework of a trial, rendering harmless error analysis ineffective). In *Sullivan*, the Court held that an incorrect instruction on reasonable doubt tainted the entire trial making it impossible for an appellate court to do more than speculate about whether the

jury's verdict was attributable to the error. *Id.* Consequently, the Court was unable to perform its particularized harmless error analysis, that is, "whether the guilty verdict rendered in *this* trial was surely unattributable to the error." *Id.* at —, 113 S. Ct. at 2081. There is, however, "'a strong presumption'" that errors are not in the per se category, *id.* at —, 113 S. Ct. at 2083 (Rehnquist, J., concurring) (quoting *Rose v. Clark*, 478 U.S. 570, 579 (1986)), but rather are simply "trial error" that can be accorded contextual analysis. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). The jury-charge error here does not evade plain-error analysis. We can evaluate it within the defense strategy and its prejudice—or lack of it—to defendant. We should not resort to formulas instead of analysis.

Moreover, as the Court recognized in *Roy*, the doctrine of plain error per se is bad as a matter of policy because it eviscerates V.R.Cr.P. 30 (requiring an objection to preserve claim of error in jury instruction). A defendant who gains no advantage by objecting—given the virtual certainty that the court will correct the error and thereby remove the basis for a winnable appeal—has no incentive "to object to errors that involve omissions of essential elements of the crime." 151 Vt. at 23, 557 A.2d at 888. Precisely because defendant gains from overlooking the court's error, requiring an objection becomes more compelling. A defendant who fails to object in these circumstances should at least risk a normal plain error analysis. See *State v. Giroux*, 151 Vt. 361, 365, 561 A.2d 403, 406 (1989) (because defense theory was false accusation and defendant's intent was not put in issue at trial, failure to instruct on element of intent in touching sexual assault victim was not prejudicial to defendant and therefore not plain error).

Instead, under *Camley*'s plain error per se doctrine, a defendant has the assurance that, if convicted, on appeal he will be given a new trial. No policy asserted in favor of per se error is worth that cost to the criminal justice system. *Roy*, not *Camley*, provides the approach this Court should follow in determining whether jury instructions are plain error.