### State of Vermont v. Ronald McGee

[655 A.2d 729]

No. 92-364

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 13, 1995

*Jeffrey L. Amestoy,* Attorney General, and *David Tartter,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Charles Martin* of *Martin & Paolini,* Barre, for Defendant-Appellant.

**Gibson, J.** Defendant Ronald McGee appeals his first-degree murder conviction for killing William Bessette while perpetrating an

attempted robbery, 13 V.S.A. § 2301.* He argues for reversal based on several asserted errors in the trial court's instructions to the jury and the court's denial of his motion for judgment of acquittal. We affirm.

In the early morning hours of June 4, 1991, William Bessette was shot and killed outside the home of Ann Barbour in Essex Junction, Vermont. Barbour operated a "crack house," which defendant and his brother, Leroy, visited on occasion. Barbour had informed defendant that she believed Leroy had stolen some of her cocaine, and that she had hired Bessette to retaliate by harming Leroy. Concerned for Leroy's safety, defendant, accompanied by his brother-in-law Samuel Hudson, and two friends, David Shelby and Timothy Roarda, visited Leroy late in the evening on June 3 to warn him of Bessette's impending visit. After speaking with Leroy, defendant and his companions drove to Barbour's home, and en route, devised a plan to steal Barbour's cocaine.

According to the plan, defendant would enter Barbour's home, converse with the others, and determine where Barbour kept her cocaine cache. Hudson and Shelby would stay outside the house, while Roarda remained by the car to keep lookout and serve as the getaway driver. When defendant believed the time was right, he would signal Hudson and Shelby to enter the home. Defendant and Hudson would hold the occupants at gunpoint while Shelby would take the drugs, whereupon the three would escape to the car and drive off with Roarda.

As often happens in these situations, the scheme went awry. Defendant and his cohorts arrived at Barbour's home as planned to steal the cocaine. Defendant, armed with a concealed handgun, knocked and entered the residence. Hudson, who was carrying a rifle, remained outside the house with Shelby, and Roarda waited by the car. Once inside the home, defendant encountered Barbour and Bessette, as well as Daniel Langevin, and two others. Barbour offered defendant some cocaine, which defendant accepted. Defendant spoke with Barbour about Leroy's situation, attempting to convince her not to send Bessette after Leroy. Barbour refused to call off Bessette, but agreed that defendant could accompany Bessette to visit Leroy. Defendant remained inside the home for some forty-five minutes while his accomplices remained outside awaiting defendant's signal.

---

* 13 V.S.A. § 2301 provides in part: "Murder committed . . . in perpetrating . . . robbery [i.e. felony murder] shall be murder in the first degree."

Shelby grew impatient with the apparent delay and decided to investigate. He entered Barbour's home under an assumed name, used cocaine with the other occupants, and took defendant aside, suggesting to him that they forget about robbing Barbour. Defendant replied, "No." Shortly thereafter, defendant, Shelby, Bessette and Langevin left Barbour's house. When they stepped outside, they encountered Hudson with his rifle in hand. At this point, defendant told Hudson, "Come on, let's go."

Accounts of what happened next differed at trial. Langevin and Shelby testified that Hudson put his rifle against Bessette's back as Bessette walked by him, which ultimately caused Bessette to draw his gun and aim it at Hudson. According to these witnesses, defendant then shot Bessette. Defendant and Hudson, however, testified that Bessette, upon seeing Hudson, immediately pulled his gun and yelled, "Nigger you're dead!" whereupon defendant drew his gun and shot Bessette.

After the shooting, defendant returned to Barbour's home. He told Barbour that Bessette had become excited and that he was concerned about Bessette's behavior. Defendant did not tell her about the shooting. He subsequently left the home and went to the car to meet Hudson, Shelby and Roarda. On the way out, defendant encountered Langevin standing next to Bessette's body. Defendant grabbed Langevin and told him not to tell anyone what had happened.

Defendant then joined his three accomplices in the car. Shelby asked defendant if he had gotten the cocaine, and he responded that he had returned to the house to try to do so, but had not succeeded. The four circled the block once and drove off. Roarda testified that he drove around the block before leaving because defendant and Shelby had urged him to return to Barbour's home for the cocaine. Roarda stated that after circling the block he decided against stopping and chose to drive on.

## I.

Defendant argues that the court erred in denying his motion for judgment of acquittal because the State failed to establish that he killed Bessette while perpetrating an attempted robbery. He claims that the attempted robbery had ended by the time he left the house and that the felony-murder charge should therefore have been dismissed. In reviewing the court's denial of defendant's motion, we consider "whether the evidence presented by the State, taken in the light most favorable to the prosecution and excluding any modifying

evidence, sufficiently and fairly supports a finding of guilt beyond a reasonable doubt." *State v. Durenleau*, 163 Vt. 8, 10, 652 A.2d 981, 982 (1994).

At trial, the State had to establish that Bessette was shot during an attempted robbery. An attempt requires intent to commit a particular crime and an overt act designed to carry out that intent. *State v. Curtis*, 157 Vt. 629, 631, 603 A.2d 356, 357 (1991). The act must advance the actor's conduct beyond mere intent, and reach far enough toward accomplishing "the desired result to amount to the commencement of the consummation." *State v. Boutin*, 133 Vt. 531, 533, 346 A.2d 531, 532 (1975).

■ Viewing the facts in the light most favorable to the State, the prosecution provided the jury with ample evidence from which it could reasonably conclude that defendant was engaged in attempted robbery when he shot Bessette, and that Bessette's death was a consequence of that attempt. Defendant crossed the line from merely preparing to rob Barbour, to engaging in the felony of attempted robbery when, intent on stealing Barbour's cocaine, he took the overt step of entering Barbour's home armed with a concealed weapon. He expressly rejected his accomplice's suggestion that he forget about stealing the cocaine, and after shooting Bessette, he returned to the home, the target of the robbery scheme, in a further effort to secure the cocaine. Regardless of whatever temporal gap defendant claims separated his attempted robbery from Bessette's killing, the State offered evidence that sufficiently and fairly supports a finding of guilt beyond a reasonable doubt. The court properly denied defendant's motion for a judgment of acquittal.

## II.

Defendant claims that the court's instructions to the jury were erroneous in several respects, but did not object to the instructions at trial. Therefore, we review the court's instructions only for plain error. *State v. Pelican*, 160 Vt. 536, 538, 632 A.2d 24, 26 (1993). Reversal is required "'only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights.'" *Id.* at 538, 632 A.2d at 26 (quoting *State v. Hoadley*, 147 Vt. 49, 53, 512 A.2d 879, 881 (1986)).

## A.

■ Defendant first takes issue with the court's omission of an element of attempted robbery, the felony underlying the first-degree murder charge. Defendant claims the jury should have been instructed to find beyond a reasonable doubt that defendant had the specific intent to permanently deprive Barbour of her personal property, and that without that instruction, the jury convicted him without first finding the requisite mens rea for felony murder. The court did not instruct the jury on the specific intent element necessary for a robbery. See *State v. Francis*, 151 Vt. 296, 307, 561 A.2d 392, 398-99 (1989) (setting forth elements of robbery). Although this was error, it does not rise to the level of plain error.

Defendant conceded that he and his cohorts had planned to commit a robbery at the Barbour residence. Because defendant's intent to rob Barbour was never a contested issue and presented neither a close nor difficult question for the jury, the omission was not plain error. See *id.* at 308, 561 A.2d at 399 (failure to instruct jury on issue that was neither close nor difficult did not rise to level of plain error); see also *State v. Giroux*, 151 Vt. 361, 365, 561 A.2d 403, 406 (1989) (no plain error where jury not instructed on wrongful intent where intent not an issue at trial). Moreover, the court instructed the jury that it had to find that defendant acted with malice when he shot Bessette to convict defendant of felony-murder. See *State v. Doucette*, 143 Vt. 573, 582, 470 A.2d 676, 682 (1983). The court's instructions, taken as a whole, did not permit defendant's conviction in the absence of the requisite mens rea for felony murder.

## B.

Defendant also challenges the jury instructions on the issue of self-defense. The court set forth the requirements for establishing the defense as follows:

> If a person kills in self-defense or in the defense of others from a violent crime he may not be convicted of any offense. However, in order to claim this defense a person must be free from fault in bringing on the difficulty with his adversary. [The person must r]easonably believe both that his adversary will if not prevented immediately inflict a fatal or serious bodily injury and reasonably believe that he must use deadly force upon the adversary to prevent him from inflicting such an injury.

The court instructed the jury that if it found that the State had proved beyond a reasonable doubt that the killing occurred during an

attempted robbery, then they could not consider the defense of self-defense. Defendant claims the instructions constitute plain error because they (1) impermissibly shifted the burden of proof of the defense onto defendant, and (2) included a freedom-from-fault element that is not required under Vermont law.

■ ■ Although the instructions did not clearly state that the prosecution bore the burden of disproving self-defense, see *State v. Baker*, 154 Vt. 411, 416, 579 A.2d 479, 481 (1990), any error was harmless. The instructions correctly laid out the elements of self-defense, including that defendant must be faultless in bringing on the difficulty with his adversary. See *State v. Rounds*, 104 Vt. 442, 451, 160 A. 249, 251 (1932). The jury would not reach the issue of self-defense if it first found that the State had proved beyond a reasonable doubt that Bessette was killed during the robbery attempt. If defendant was acting while in the course of an attempted felony, he was not entitled to the benefit of self-defense because his own conduct brought about the difficulty with Bessette. Cf. *United States v. Peterson*, 483 F.2d 1222, 1231 (D.C. Cir. 1973) ("It has long been accepted that one cannot support a claim of self-defense by a self-generated necessity to kill. The right of homicidal self-defense is granted only to those free from fault in the difficulty . . . ."). Here, the jury found that defendant was guilty of felony murder because Bessette was killed during an attempted robbery. Any error in the court's instructions was harmless.

### C.

Finally, defendant claims error in the court's instructions on whether the killing occurred during the course of the attempted robbery. He contends that the instructions were confusing, improperly shifted the burden of proving abandonment to the defense, and omitted the defense's theory that the killing occurred after the attempt had ended. Upon review of the instructions we find defendant's arguments are meritless. The trial court clearly instructed the jury that to find defendant guilty of felony murder, it must find that the "killing was done in the perpetration or attempted perpetration of robbery." It instructed the jury on the elements of attempt and on the requirements for abandonment, and reiterated that the State had the burden of proof.

The court's instructions, taken as a whole, were proper. Defendant fails to show the existence of error that has resulted in a miscarriage of justice.

*Affirmed.*