2004 VT 10

# State of Vermont v. Patrick Voorheis

[844 A.2d 794]

No. 02-478

Present: Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed February 13, 2004

266

*Robert Simpson*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Karen R. Shingler*, Burlington, for Defendant-Appellant.

¶ 1. **Amestoy, C.J.** Defendant Patrick Voorheis appeals a jury conviction for attempting to promote a lewd performance by a child, in violation of 13 V.S.A. § 2822, and for inciting another to commit a felony in violation of 13 V.S.A. § 7. Defendant claims that the trial court erred in (1) denying defendant's motion for a judgment of acquittal; (2) denying motions for mistrial upon a State's witness and prosecutor comments relating to defendant's exercise of his right to remain silent; and (3) admitting hearsay evidence. We affirm.

¶ 2. Defendant was involved in an extra-marital affair with Lori Delisle, a single mother who resided with her two children: nineteen-year-old Jacques and thirteen-year-old Jennifer. Jennifer suffers from developmental disabilities and cognitive limitations, which make her function at the level of a much younger child. At the time some of the relevant events occurred, Jacques's girlfriend, Beth Brandolino, lived in Ms. Delisle's residence as well.

¶ 3. Defendant and Ms. Delisle communicated often via e-mail and through internet chat, or "instant messaging." Ms. Brandolino testified that Ms. Delisle had shown her pictures of Jennifer naked, in her underwear, and in black lingerie. Ms. Delisle told her that she had sent defendant some of the pictures. Ms. Delisle repeated to Ms. Brandolino defendant's comments about Jennifer's body, and stated that she had bought the lingerie and taken those pictures at his request. Ms. Brandolino testified that she was present when Ms. Delisle sent the lingerie pictures to defendant, and was able to observe the "instant messaging" response from defendant. Ms. Brandolino further testified that Ms. Delisle talked about defendant wanting to take Jennifer's virginity, and

about having a "threesome" with Jennifer and defendant. Ms. Brandolino testified that she saw a picture of defendant's penis that he had sent addressed to both Jennifer and Ms. Delisle.

¶ 4. Ms. Brandolino testified that, shortly after moving into her own residence in May 2000, she learned from Jacques that defendant was alone with Jennifer. She testified that she was concerned about Jennifer's safety, so she, Jacques and a friend, Sarah French, went to Ms. Delisle's residence. Soon after they entered the house, Jennifer came out of her mother's bedroom. When asked what was she doing there, Jennifer said that she and defendant were lying in bed, that he was rubbing her back and had told her she was beautiful and "a princess." She stated that they went to the bedroom at defendant's suggestion. The child did not seem in distress.

¶ 5. Defendant was charged with use and attempted use of a child in a sexual performance in violation of 13 V.S.A. § 2822, and with incitement of another to commit a felony in violation of 13 V.S.A. § 7. At trial, the State introduced evidence seized from Ms. Delisle's home, including a computer system and discs which stored a number of photographs of Jennifer naked. The computer forensic examination recovered text from "instant messaging" conversations between defendant and Ms. Delisle. An expert witness testified for the State that "instant messaging" is not normally saved into a computer, and that to save it to floppy disks required a concerted effort. The texts of the instant messaging contained very graphic and sexually explicit language. In these conversations, defendant makes comments about Jennifer's appearance, suggests poses and requests more pictures. Defendant and Ms. Delisle discuss a plan to let defendant have his own lewd photo shoot. The plan involved finding a time when neither Jacques nor Ms. Brandolino would be present, and leaving Jennifer alone with defendant, which would allow him to groom the child's pubic hair, costume, and pose the child in a manner that better displayed her genitals.

¶ 6. Ms. Delisle was subpoenaed to testify. At the time of defendant's trial, she had already been convicted of using her daughter in a sexual performance. She stated that she had taken three nude photographs of Jennifer to educate Jennifer about her body, and that she sent them to defendant to get his advice on how to talk with Jennifer. Ms. Delisle denied that defendant had suggested buying Jennifer lingerie and taking pictures. She claimed she could not recall sending those pictures to defendant, or receiving defendant's naked photograph addressed to both her and Jennifer. Ms. Delisle denied her comments regarding the pictures and defendant's sexual interest in Jennifer. When asked about

the chat messages saved in her computer, Ms. Delisle testified that she created a conversation in which defendant suggests giving Jennifer alcohol because she suspected that there were people using her computer without her permission and wanted to see if it would generate a response from them. She also claimed that she had saved and edited other instant messages to put the defendant in a bad light. Ms. Delisle asserted a lack of knowledge or recollection with respect to several relevant events.

¶ 7. Defendant took the stand and denied having seen or known about the pictures until he was criminally charged. He denied making the incriminating statements attributed to him, or having any feelings or sexual interest for the child. Although he admitted that he was alone in the bedroom with Jennifer, he explained that he was using the telephone when she entered the room and that he merely put his arm around her.

¶ 8. At the close of the State's case, defendant sought dismissal of all charges for lack of sufficient evidence. The trial court granted the motion as to the substantive offense of use of a child in a sexual performance, but allowed the case to go to the jury on the charges of inciting and attempt. The jury returned a verdict of guilty on both charges. Defendant's motion for a new trial was denied, and this appeal followed.

¶ 9. Defendant first claims that the trial court abused its discretion by not dismissing the charges of incitement and attempt for lack of sufficient evidence. According to defendant, the only evidence presented was the "instant messaging" text, which was retrieved from Ms. Delisle's computer, and which Ms. Delisle claimed to have edited. Defendant compares this case to *State v. Durenleau*, 163 Vt. 8, 652 A.2d 981 (1994), arguing that an unsympathetic defendant was found guilty based upon the conjecture and speculation of a jury presented with inflammatory but "scant evidence." We agree with the trial court that the evidence was sufficient to support both verdicts.

¶ 10. In reviewing the denial of a motion for acquittal, this Court views the evidence in the light most favorable to the State. *State v. Driscoll*, 137 Vt. 89, 100, 400 A.2d 971, 978 (1979). The sole issue is whether that evidence sufficiently and fairly supports a finding of guilt beyond a reasonable doubt. *State v. Griswold*, 172 Vt. 443, 448, 782 A.2d 1144, 1148 (2001).

¶ 11. The charge of inciting another to commit a felony, 13 V.S.A. § 7, requires the State show that the defendant endeavored "to incite, procure or hire another person to commit a felony, though a felony is not actually committed as a result of such inciting, hiring or procuring." The captured instant messaging text offered substantial evidence of defendant's requests to Ms. Delisle to pose her child and take additional pictures

for his viewing. The text also contained ample evidence that he had solicited Ms. Delisle's consent to carry on his own lewd photo session. Ms. Brandolino's testimony was consistent with this evidence. There was sufficient evidence for a jury to reasonably conclude that defendant had incited Ms. Delisle to use her daughter in a sexual performance in violation of 13 V.S.A. § 2822, and/or to consent to her daughter's participation in a sexual performance in violation of 13 V.S.A. § 2823. Either act is a felony.

¶ 12. The guilty verdict on the charge of attempt is also fairly supported by the evidence. The State was required to show that defendant intended to use a child in a sexual performance, and that he committed an overt act designed to carry out that intent. See *State v. McGee*, 163 Vt. 162, 165, 655 A.2d 729, 732 (1995). "The act must advance the actor's conduct beyond mere intent, and reach far enough toward accomplishing 'the desired result to amount to the commencement of the consummation.'" *Id.* (quoting *State v. Boutin*, 133 Vt. 531, 533, 346 A.2d 531, 532 (1975)). Here, the jury could reasonably infer defendant's intent to commit the charged offense from his electronic conversations with Ms. Delisle planning the photo shoot. The State's evidence of defendant's overt act designed to carry out his intent included testimony that defendant was left alone in the house with Jennifer, just as discussed in the instant messaging, and that he took the child to her mother's bedroom. The State presented evidence of a digital camera seized in Ms. Delisle's bedroom. Finally, the jury heard testimony that defendant and the child were lying in bed when Ms. Brandolino and her companions arrived, and that defendant was rubbing the child's back and flattering her. Viewing that evidence in the light most favorable to the State, the prosecution provided the jury with ample evidence from which it could reasonably conclude that defendant was attempting to use a child in a sexual performance in violation of 13 V.S.A. § 2822.

¶ 13. In arguing that the evidence is insufficient to support the findings, defendant's reliance on *Durenleau* is entirely misplaced. In that case, there was only a "meager evidentiary record of defendant's involvement in her husband's death." *Durenleau*, 163 Vt. at 14, 652 A.2d at 984. Here, the retrieved electronic conversations between defendant and Ms. Delisle, together with witness testimony, offered ample evidence to support the jury's findings. Defendant argues that the electronic text is "meager evidence" of guilt, since the text was "admittedly doctored and edited." The jury, however, could find this recovered correspondence reliable and choose to disbelieve Ms. Delisle's claim that she had manipulated its contents. This is not a question of sufficiency of the evidence but

rather of its credibility and, as such, it falls entirely within the jury's province. See *State v. Norton*, 134 Vt. 100, 103, 353 A.2d 324, 326 (1976) (credibility of witnesses and weight given to their testimony is the sole province of the jury).

¶ 14. Defendant next argues that the court erred in denying his motions for a mistrial following the answer of a State witness, and following a prosecution question to defendant during cross-examination. Defendant asserts that each represents an unconstitutional comment upon his invocation of his right to remain silent.

¶ 15. Once a suspect is taken into custody and given the Miranda warnings, his silence cannot be used against him at trial. *State v. Byrne*, 149 Vt. 257, 262, 542 A.2d 667, 670 (1988). The use of a defendant's post-Miranda silence for impeachment purposes is "fundamentally unfair" and a violation of the Due Process Clause. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). If the prosecution were allowed to use a defendant's silence to undermine his defense, the defendant would be penalized for exercising his constitutional right to silence. See *State v. Percy*, 149 Vt. 623, 627, 548 A.2d 408, 410 (1988).

¶ 16. Defendant's first assertion of error relates to defendant's claim that a police officer testifying for the State impermissibly commented that defendant did not want to give a statement. The officer's statement came in direct testimony when he was asked if he had any conversation with defendant when defendant was being transported to the arraignment. The officer testified: "I had no intentions to speak with him as he didn't want to give a statement in any way. He initiated a conversation."

¶ 17. Defendant's second assertion of error arises from his claim that the prosecutor's question to defendant during cross-examination: "Is this the first time you ever told anybody that?" was also an impermissible comment on defendant's right to remain silent. The prosecutor's question to defendant followed defendant's statement on cross-examination that, after their respective arraignments, Ms. Delisle was blackmailing defendant into having sex with her. Defendant moved for a mistrial after each of the comments

¶ 18. We first observe that neither of the statements comes close to being impermissible comments of constitutional dimensions. The police officer's testimony was not a comment on defendant's failure to offer an exculpatory statement at the time of arrest. The officer was attempting to explain that defendant had initiated the conversation that occurred when defendant was taken to arraignment. Nor could the prosecutor's question be reasonably construed to rise to the level of constitutional infirmity

ascribed to it by defendant. We agree with the trial court's characterization of the comment:

> [T]he prosecutor's question was not directed at custodial interrogation, but rather the failure of the defendant to complain about a crime against himself during the lengthy period of time in which he was not in custody following his arraignment. There is no prohibition against such a question or comment.

¶ 19. Moreover, the record does not reflect any attempt by the prosecution to exploit these oblique references to defendant's silence. In each instance, after defendant's objection, the prosecution drew no further attention to the remark either during witness testimony or in closing argument. The trial court noted that it would be surprised if any of the jurors noticed the comment or its significance, offering nevertheless to give a curative instruction, which defendant rejected. In sum, these comments are not even remotely similar to the extensive, direct references to defendant's invocation to his right to silence that we have previously held unconstitutional. Cf. *State v. Percy*, 149 Vt. at 626, 548 A.2d at 409 (use of defendant's silence to undermine his insanity defense held reversible error where officers testified that defendant remained silent after the charges and prosecutor argued in the closing argument that the court should infer from his silence that defendant was lying about his amnesia); *State v. Mosher*, 143 Vt. 197, 209, 465 A.2d 261, 268 (1983) (use of defendant's silence held constitutional error where State "persevered" in bringing before the jury testimony of post-Miranda silence, reemphasized the issue during closing arguments, and invited the jury to draw inferences from that silence).

¶ 20. The trial court has discretion in a mistrial motion. *State v. Mears*, 170 Vt. 336, 345, 749 A.2d 600, 607 (2000). There is no abuse of discretion unless the court entirely withholds its discretion, or exercises it upon grounds that are clearly untenable or unreasonable. *Id.* Furthermore, in order to constitute reversible error, "it must appear affirmatively that a denial of the motion has resulted in prejudice to the moving party, with the burden of proof being on the movant." *State v. Covell*, 142 Vt. 197, 199, 453 A.2d 1118, 1119 (1982). Whether the moving party was prejudiced depends on the facts and circumstances of each case, and therefore we review the denial of the motion within the context of the entire proceedings. *Id.* Under the circumstances of this case, the trial court was well within its discretion in concluding that a mistrial was not warranted.

¶ 21. Defendant's final claim is that the trial court abused its discretion by allowing the State to examine Ms. Delisle about her statement to Ms.

Brandolino and admitting evidence of the statement. Ms. Brandolino testified that Ms. Delisle asked her, "could you try to get Pat and I off the hook?" At trial, the court correctly ruled that Ms. Delisle's statement was not hearsay, but evidence of bias. Nevertheless, in its Decision and Order after defendant's motion for a new trial, the court characterized Ms. Delisle's request as a co-conspirator statement, thus admissible under V.R.E. 801(d)(2)(E).

¶ 22. Statements of co-conspirators are not hearsay when offered against a party, if the statement was made during the course of and in furtherance of the conspiracy. V.R.E. 801(d)(2)(E). In the absence of a formal conspiracy charge, the court must find independent evidence of a concert of action in which the defendant was a participant. See *State v. Tedesco*, 147 Vt. 133, 135-36, 513 A.2d 1164, 1165 (1986), *overruled on other grounds, State v. Gallagher*, 150 Vt. 341, 554 A.2d 221 (1988).

¶ 23. Appellant argues that the admission of the evidence was error because the prosecution failed to prove by independent evidence the existence of a conspiracy between appellant and Ms. Delisle to unlawfully influence the witness' testimony, as required by V.R.E. 801(d)(2)(E). See *id.* (absent a formal conspiracy charge, statements of alleged co-conspirators are admissible if there is independent evidence of a concert of action in which defendant was a participant).

¶ 24. The trial court determines the admissibility of evidence, including preliminary questions of whether statements fall within exceptions to the hearsay rule. See V.R.E. 104(a). We will disturb the trial court's discretionary ruling only if that discretion has been abused. *State v. Ayers*, 148 Vt. 421, 424, 535 A.2d 330, 332 (1987). Because the court did not abuse its discretion admitting the evidence, we affirm.

¶ 25. We observe first that the trial court did find "compelling" evidence of a conspiracy between appellant and Ms. Delisle to create a cover-up. The trial court observed that "perhaps the first thing" that Ms. Delisle did after her home was searched and her computer seized was to e-mail defendant to advise him of what had just happened. The forensic analysis of defendant's computer shows that shortly after the police investigation started, defendant installed and ran a software program in his computer which makes files completely unrecoverable. In contravention of their conditions of release, defendant and Ms. Delisle met several times after their respective arraignments. It was reasonable for the trial court to infer that in these meetings they had discussed a "cover up, or at least, exoneration of defendant." Ms. Delisle later appeared at the office of defendant's attorney to execute an affidavit exonerating defendant.

Finally, during her cross-examination, Ms. Delisle told a story attempting to exculpate defendant that the court found to be "patently false."

¶ 26. In light of those findings, the court could reasonably consider that Ms. Delisle's attempt to influence Ms. Brandolino's testimony was one more step in furtherance of the conspiracy between Ms. Delisle and defendant. The fact that defendant may have not been aware of a particular act Ms. Delisle took in furtherance of the conspiracy does not exclude it from the conspiracy's scope. See *Pinkerton v. United States*, 328 U.S. 640, 647 (1946) (an overt act of one co-conspirator may be the act of another without an agreement specifically directed to that act). Therefore, the statement was fairly characterized as that of a co-conspirator admissible under V.R.E. 801(d)(2)(E).

¶ 27. In any event, we do not need to evaluate the sufficiency of this evidence to support a finding of conspiracy, since it is not necessary to fit the statement within the 801(d)(2)(E) exception. As the trial court initially found, the statement does not fit within the 801 definition of hearsay in the first place. "Hearsay" is an out of court statement offered in evidence to prove the truth of the matter asserted. V.R.E. 801(c). Ms. Delisle's request to Ms. Brandolino, to help her and appellant by testifying falsely, is not hearsay since it was not offered to prove the truth of the statement but to show Ms. Delisle's interest in procuring a favorable outcome in appellant's trial. See *State v. Beattie*, 157 Vt. 162, 166-67, 596 A.2d 919, 922 (1991) (statement that a passing motorist had told arresting officer that there was a person "asleep, passed out, or even dead" behind the wheel of defendant's van was not hearsay because it was not offered to prove the truth of the matter asserted but rather to explain the officer's reasons to approach the van). A request of this nature cannot be offered for its truth because it is neither true or false. See *United States v. Shepherd*, 739 F.2d 510, 514 (10th Cir. 1984) ("An order or instruction is, by its nature, neither true nor false and thus cannot be offered for its truth."); *United States v. Keane*, 522 F.2d 534, 558 (7th Cir. 1975) (same). The legal relevancy of the question "could you try to get Pat and I off the hook?" is the fact that such an inquiry was made, not the truthfulness of the question. See *Shepherd*, 739 F.2d at 514 (order or instructions admissible because they were offered to show that they occurred rather than to prove the truth of something asserted). We therefore find that such evidence was properly admitted for impeachment purposes, in order to show Ms. Delisle's possible bias in favor of appellant.

¶ 28. The credibility of a witness may be attacked by any party, including the party calling him or her. V.R.E. 607. A witness's credibility may be impeached by evidence of personal bias. Reporter's Notes, V.R.E. 607;

*State v. Fuller*, 168 Vt. 396, 406, 721 A.2d 475, 482 (1998). This avenue for attacking the witness's testimony is not subject to the limitations on the use of extrinsic evidence imposed under Rules 608, 609, or 613. Reporter's Notes, V.R.E. 607. "[W]ide latitude should be allowed on cross-examination for the purpose of showing who and what the witness is, and that he is unreliable, prejudiced, or biased." *State v. Berard*, 132 Vt. 138, 147, 315 A.2d 501, 508 (1974). The trial court has ample discretion in determining the scope of such, and its action will not be reversed unless an abuse of discretion is shown. *State v. Morrill*, 127 Vt. 506, 513, 253 A.2d 142, 147 (1969).

¶ 29. Here, during the prosecution's examination, Ms. Delisle denied appellant's involvement in the exploitation of her daughter, and professed a lack of recall on several questions relevant to the issue of appellant's culpability. Questioning of Ms. Delisle about her feelings toward appellant, and her request to Ms. Brandolino to testify falsely in order to get Ms. Delisle and appellant "off the hook," was intended to suggest that Ms. Delisle's interest in protecting defendant was tainting her testimony. There was no abuse of discretion in admitting the evidence that supported this theory.

*Affirmed.*