2011 VT 50

**STATE of Vermont v. Lisa LAMPMAN**

[22 A.3d 506]

No. 09-304

¶ 1. May 2, 2011. Defendant appeals her conviction of simple assault arguing that certain comments made by the judge were an abandonment of his impartiality and denied defendant a fair trial, that the trial court abused its discretion by not allowing defendant to present certain impeachment evidence, and that the jury instructions were erroneous. We affirm.

¶ 2. This case arose out of relationships among three women: the victim, Amy, and defendant Lisa Lampman.[1] Amy and the victim were romantically involved for two and a half years. After that relationship ended, Amy moved in with defendant. In January 2009, the three women encountered each other in a gas station parking lot, where a fight ensued. Four individuals were criminally charged as a result of the fight: defendant, Amy, Nathan (Amy's son), and Anthony. The victim testified at trial that she noticed these four individuals following her in defendant's truck. Nathan was hanging out the window, screaming at her, and defendant's truck pulled across several lanes of traffic to continue following the victim. The victim pulled into a gas station, and the four individuals jumped out of defendant's

truck. Anthony smashed the back window of the victim's truck, while another person broke her passenger-side mirror. Defendant slapped the victim's glasses off of her face, and Nathan tackled the victim from behind. Defendant then began kicking the victim, and when the victim tried to get up, Anthony grabbed her and pushed her down to the ground. The proprietor of the gas station witnessed the victim being beaten and trying to defend herself. Amy stated that she observed defendant deliver a "football style kick" to the victim's face. The victim's injuries were consistent with such testimony. Defendant claimed instead that she and Amy had simply been driving Nathan and Anthony to work and that her group encountered the victim only by chance. Throughout trial, defendant maintained that the victim was the instigator, starting the fight by pushing Amy, and that defendant had merely acted in self-defense. The jury convicted defendant of simple assault.

¶ 3. The State offered testimony from Taylor, who had been driving behind defendant on the day in question. Taylor knew defendant, and she testified that she saw her own boyfriend, Cody, in defendant's truck. Taylor was the only witness to testify that Cody was in defendant's truck. At the request of one of defendant's passengers, Taylor let defendant's truck pull in front of her car and behind the victim's vehicle. She saw Nathan hanging out of the truck's window and yelling. She followed defendant's truck to the gas station and observed the four individuals named above exit the truck. She watched the ensuing fight, although she did not see who started it. Taylor stated that sometime after the incident she spoke to Nathan at his place of employment, where Cody and Anthony also worked. The prosecuting attorney asked the witness, "What did you talk about with Nathan regarding the incident?" She responded, "They just said that they

---

[1] Last names of nonparties have been omitted to preserve their privacy.

didn't mean for [me] to see that." "Didn't mean for you to see what?" he inquired. "The fight," she replied.

¶ 4. Defense counsel then objected to the question, arguing that hearsay statements attributable to a co-conspirator were inadmissible unless the court found independent evidence of a conspiracy. See V.R.E. 801(d)(2)(E) (out-of-court statement not considered hearsay if statement is made "by a co-conspirator of a party during the course and in furtherance of the conspiracy"); *State v. Voorheis*, 2004 VT 10, ¶ 22, 176 Vt. 265, 844 A.2d 794 ("In the absence of a formal conspiracy charge, the court must find independent evidence of a concert of action in which the defendant was a participant."). The trial court responded, "I'm finding independently that there was a conspiracy, at least an implicit conspiracy to beat up [the victim]," thus overruling defendant's objection.

¶ 5. Defendant made no objection to this ruling at trial, nor did she request a limiting instruction or move for a mistrial. Further, she did not raise any issue with the court's statement in her motion for a new trial. However, on appeal, defendant argues that by finding a conspiracy, the judge usurped the jury's role as factfinder on the ultimate issue of self-defense and deprived her of the right to a trial by jury. Because this claim arises for the first time in this appeal, defendant has failed to preserve her claim of error. See, e.g., *State v. McGee*, 163 Vt. 162, 165, 655 A.2d 729, 732 (1995) (discussing effect of failure to preserve claim of error for jury instructions).

¶ 6. We generally review unpreserved claims of error under our traditional plain error standard. See, e.g., *State v. Carrasquillo*, 173 Vt. 557, 559, 795 A.2d 1141, 1144 (2002) (mem.) (explaining that we review unpreserved evidentiary rulings for plain error only); *State v. Koveos*, 169 Vt. 62, 69, 732 A.2d 722, 727 (1999) (same). "Plain error exists only in excep-

tional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." *State v. Pelican*, 160 Vt. 536, 538, 632 A.2d 24, 26 (1993) (quotation omitted). To reverse on plain error, this Court must "find that the claimed error not only seriously affected substantial rights, but that it had an unfair prejudicial impact on the jury's deliberations. Prejudice must exist to demonstrate that error undermined fairness and contributed to a miscarriage of justice." *Id.* at 539, 632 A.2d at 26 (quotation omitted).

¶ 7. Defendant argues that the trial court's statement amounted to a finding that she had committed an uncharged criminal act and that it should have sua sponte offered a limiting instruction to correct this error. According to defendant, without such instruction, the jury could have considered this finding for any purpose. Defendant contends that because the only contested issue on the assault charge was whether she acted in self-defense, the court's finding of a conspiracy on the record was "tantamount to a directed verdict," defeating her presumption of innocence and violating her right to a jury trial.

¶ 8. Defendant's assertion is a mischaracterization of what amounted to a required evidentiary ruling. Defendant objected to the witness's testimony on the grounds that it was hearsay and could come in only if there was an evidentiary finding of conspiracy. The court then had to determine if there was "independent evidence of a concert of action in which the defendant was a participant." *Voorheis*, 2004 VT 10, ¶ 22; see also Reporter's Notes, V.R.E. 801(d)(2)(E) ("If the statement is offered for its truth as an admission, the trial court must find as a preliminary matter that there is independent evidence of the existence of the conspiracy."); 5 J. McLaughlin, Weinstein's

514

Federal Evidence § 801.34[6][c][1], at 801-100 (2d ed. 2009) ("The existence and membership of a conspiracy are preliminary questions of fact that must be resolved by the district court before a challenged statement may be admitted under Rule 801(d)(2)(E)."). For purposes of its evidentiary ruling, the court found sufficient evidence of an "implied conspiracy" such that Nathan's statement was treated as the admission of a co-conspirator. See Reporter's Notes, V.R.E. 801(d)(2)(E). While it would have been better practice to make such a ruling outside the hearing of the jury, defendant fails to show that this comment affected her substantial rights or had an unfair prejudicial impact on the jury's deliberations, especially given the trial court's jury instructions.

¶ 9. We note that other courts have refused to find reversible error in similar cases, even where the defendants were facing charges of conspiracy and were convicted of such crimes. In *State v. Moye*, 507 A.2d 1001 (Conn. 1986), for example, the defendant was charged with arson and conspiracy to commit arson. In denying a hearsay objection at trial, the court stated in front of the jury that "[t]he conspiracy has been established at least on a prima facie basis, at least in the opinion of this Court, and that permits this to come in." *Id.* at 1004. The defendant filed a belated motion for a mistrial, which was denied.

¶ 10. On appeal, Moye argued that he was denied a fair trial due to the trial court's statement. The appeals court disagreed. It characterized the appeal as "an ambush of the trial judge." *Id.* at 1005. It noted that the trial court had given a curative instruction couched in general terms in its jury instructions, without objection. It found that the jury charge language made clear that "the jury during its deliberations was not to consider the action of the trial court in ruling on the admissibility of evidence, that it

should consider only the evidence admitted and that proof beyond a reasonable doubt, not prima facie evidence, was required to find the defendant guilty." *Id.* The *Moye* court presumed that the jury followed these instructions, and it also found ample evidence had been presented at trial to show that a conspiracy existed. *Id.* It thus concluded that the trial court's statement did not deprive the defendant of a fair trial. *Id.*

¶ 11. The United States Court of Appeals for the Fifth Circuit reached a similar conclusion in *United States v. Lance*, 853 F.2d 1177 (5th Cir. 1988). There, the defendants were convicted of conspiring to possess and distribute illegal drugs, and they argued that they were denied a fair trial due to the trial court's ruling on the admissibility of co-conspirator testimony. In that case, the trial court stated in front of the jury that it had found independent evidence "that a conspiracy existed," and that the defendants were members of the conspiracy. *Id.* at 1182. The defendants argued that the court should have granted their motion for a mistrial because the remark "incurably destroyed the judge's impartiality and undermined the jury's role," and because it amounted to a directed verdict of guilty. *Id.*

¶ 12. The appeals court rejected these arguments. Turning first to the defendants' assertion of judicial bias, the court acknowledged the prejudicial nature of the judge's statement. At the same time, however, it recognized that it could not evaluate the defendants' claim by viewing a single statement in isolation, and it must instead view the proceedings as a whole. Even a comment arguably suggesting a judge's opinion concerning guilt was "not necessarily reversible error but must be reviewed under the totality of the circumstances, considering factors such as the context of the remark, the person to whom it is directed, and the presence of curative instructions." *Id.*

¶ 13. The appeals court concluded that, taken in its proper perspective, the judge's statement was plainly made in the course of an evidentiary ruling, and that the context of the remark communicated that the trial judge was making a technical statement with a particular legal significance. *Id.* at 1182. As in *Moye*, the trial judge cautioned the jury that he made rulings of law during the trial and that his rulings should not suggest that he had any opinion on the merits of the case or that he favored either side. The appeals court concluded that the mistake did not deprive the defendants of a fair trial because "the judge's one short statement" did not show "prejudice that warrants reversal of the [defendants'] convictions." *Id.* at 1183.

¶ 14. The *Lance* court also rejected the defendants' argument that the trial court's "statement amounted to a directed verdict — an error that was presumptively prejudicial, practically incurable, and thus automatically reversible." *Id.* It agreed that a judge may not direct a verdict of guilty, and that the judge's statement in this case was not merely a permissible comment on the evidence. Nonetheless, the court found that the defendants mistakenly relied on cases where the trial judge had "made a statement during his jury instructions that effectively prohibited the jury from deciding a particular factual issue, considering a theory of defense, or reaching a decision uninfluenced by the judge's view." *Id.*

¶ 15. The court observed a fundamental difference between a remark that occurred while the judge was instructing the jury on how to decide the case and one that occurred during another stage of the proceedings which was not directed to the jurors. *Id.* It explained that this distinction is "a matter of both timing and purpose; jury instructions must correctly and adequately state the law, and a defective jury charge cannot be cured by statements made earlier in the trial." *Id.*

¶ 16. If a conspiracy conviction need not be reversed because a jury heard a trial judge's evidentiary finding of conspiracy concerning the admissibility of hearsay, it makes little sense to find reversible error per se in a case involving simple assault. Defendant was not charged with conspiracy to commit the assault,[2] nor is conspiracy an element of aggravated assault or of self-defense. While the aggressor in a fight is not entitled to rely on a claim of self-defense, it does not follow that the court's evidentiary ruling removed this issue from the jury's consideration. The jury was properly instructed on the law governing the assault charge and defendant's claim of self-defense. The court emphasized that its rulings during trial were not intended to express the court's own view on the merits of the case, but rather were directed at matters of law. The court reiterated to the jury that when it had referred to the evidence and the claims of the parties during trial, the court was not instructing the jury how it should decide any question of fact. The court instructed that the jury alone was the trier of the fact, that its determination of fact controlled, and that it alone was responsible for determining if defendant acted with the requisite intent. The court's instructions were full, fair, and correct, and we must presume, absent any indication otherwise, that the jury followed the court's instructions. *State v. Shaw*, 149 Vt. 275, 279, 542 A.2d 1106, 1108 (1987).

¶ 17. Defendant contends our decision should be controlled by *State v. Camley*, 140 Vt. 483, 438 A.2d 1131 (1981), which dealt with a trial court's failure to instruct that the jury had the option of returning a not guilty verdict, stating instead that the defendant could be acquitted only if

---

[2] Interestingly, defendant was charged with accomplice liability as part of a malicious mischief charge for which the jury acquitted.

the jury found that he acted in self-defense. We reversed the defendant's conviction on appeal, finding that although the defendant did not object to the jury instructions below, the court's omission struck at the defendant's "fundamental rights." *Id.* at 490, 438 A.2d at 1135. We have since held that it is "bad policy to create a category of errors which are plain per se." *State v. Roy*, 151 Vt. 17, 23, 557 A.2d 884, 888 (1989), *overruled on other grounds by State v. Brillon*, 2008 VT 35, 183 Vt. 475, 955 A.2d 1108. Further, to the extent that *Camley* is still good law, its holding was based on the fact that the trial court provided erroneous instructions to the jury. The *Camley* Court reasoned that by omitting a key instruction the trial judge improperly limited the issues that the jury could decide and it "thwarted" and "barred the jury from returning a general verdict of not guilty." 140 Vt. at 490, 438 A.2d at 1135. As *Lance* holds, we are dealing with a "fundamentally different" situation here. 853 F.2d at 1183.

¶ 18. The real question is whether defendant suffered any actual prejudice as a result of the court's evidentiary ruling. As the *Lance* court explained, just "like other judicial comments during a trial, an appellate court must determine whether the remarks were prejudicial by examining them in the context of the whole trial and considering other factors such as the impact of the remark and curative instructions." 853 F.2d at 1184. The *Lance* court found no basis for reversal given the absence of any actual prejudice. Even if there had been an objection here, we should reach a similar conclusion. See also *United States v. Peters*, 791 F.2d 1270, 1284-86 (7th Cir. 1986), *superseded on other grounds by statute*, 18 U.S.C. § 3742, *as recognized in United States v. Guerrero*, 894 F.2d 261 (7th Cir. 1990) (similarly rejecting argument that trial judge had usurped the jury's function by commenting on the admissibility of a co-conspirator's out-of-court statements).

¶ 19. With regard to the conspiracy finding, the trial court here made a single brief comment in the context of an evidentiary ruling that was plainly directed at counsel and not the jury. The court did not define the term conspiracy, nor did it elaborate on the basis of its evidentiary ruling. It was a passing remark in a day-long trial on charges unrelated to conspiracy. The court did not direct a verdict of guilty, nor did it provide "instructions deciding a material fact issue as a matter of law." *United States v. Lee*, 483 F.2d 959, 960 (5th Cir. 1973). To the contrary, as in the cases above, the jury was repeatedly instructed that it was the sole finder of the facts, and that the court's evidentiary rulings in no way reflected the court's own view of the case. There was ample evidence to support the jury's verdict. This case is simply not one of the "rare and extraordinary cases," *State v. Turner*, 145 Vt. 399, 403, 491 A.2d 338, 340 (1985), where reversal is warranted on plain error grounds.

¶ 20. Defendant next contends that the court's questioning of Cody amounted to testimony on behalf of the State constituting an abandonment of its impartiality. Defendant argues that these actions violated defendant's state and federal constitutional rights by usurping the jury's role as fact finder and sole judge of witness credibility. Defendant also claims error under Vermont Rules of Evidence 605 and 614(b).

¶ 21. Like defendant's conspiracy argument above, these claims were not preserved below, and thus we review for plain error only. See, e.g., *State v. McGee*, 163 Vt. at 165, 655 A.2d at 732. As noted above, "[p]lain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is a glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." *State v. Lee*, 2008 VT 128, ¶ 11, 185 Vt. 110, 967 A.2d

1161 (quotation omitted). Defendant quotes at length from the record, arguing certain specific instances of court questioning amount to error.

¶ 22. The first instance raised by defendant occurred during the State's direct examination of Cody, where the court intervened with its own questions for the witness. Defendant contends the effect was to communicate to the jury its belief that Cody was lying. We conclude any error was harmless.

¶ 23. During the State's direct examination of Cody, he testified that his girlfriend, Taylor, had picked him up to go to lunch and that they had ended up in the parking lot where the fight took place. Taylor had previously testified that while driving to the scene of the fight she saw Cody in defendant's truck. When the State asked Cody if he had told Deputy Sheriff Underwood the day before that he had been in defendant's truck, Cody responded, "I don't remember." He then reaffirmed he had been in Taylor's vehicle when traveling to the site of the altercation. He testified that he left the scene in defendant's truck in order to return to work, as Taylor would normally travel in another direction. When questioned further about what he might have said to Deputy Underwood, he repeatedly responded that he did not remember his answers. At this point the court intervened to ask Cody why he could not remember certain statements allegedly made the day before to the deputy and reminded Cody that he was under oath. Eventually, the court called a recess to "allow [Cody] to think a little bit about what he told the deputy yesterday." The court excused the jury and went on to say to Cody, "if you are lying under oath you can be prosecuted for perjury." The court then suggested that the witness "have a little chat with yourself about what you told Mr. Underwood."

¶ 24. When the trial resumed, Cody was asked if he wanted to change anything about his testimony, and he replied that he did not. The State began to walk the witness back through the questions concerning his interaction with Deputy Underwood on the previous day. The court then interjected once again, taking over the interrogation of the witness. At one point the court stated, "could you answer clearly yes or no because I want it clear on the record." At the end of the testimony, the court called counsel to the bench and asked the State, "Are you going to prosecute this guy for perjury?" The court went on: "I don't think I've ever in a jury trial asked a witness this many questions, but I'm convinced this man is committing perjury and I'm very angry."[3]

¶ 25. The judge's statement that he believed Cody had committed perjury was said outside the hearing of the jury and was thus harmless error. "Error is harmless if we can say beyond a reasonable doubt that the jury would have convicted absent the error." State v. Williams, 2010 VT 83, ¶ 35, 188 Vt. 413, 8 A.3d 1053, citing V.R.Cr.P. 52(a) ("Any

[3] We note that in coming to the conclusion that Cody had committed perjury, the court was focused on an irrelevant inconsistency between Taylor's and Cody's testimonies — which vehicle Cody had ridden in prior to the fight — and ignored the fact that Cody's testimony was consistent with the testimonies of several other witnesses. The victim herself testified that the only people in the truck when it arrived were the four named co-conspirators: Amy, Nathan, Anthony, and defendant. And in defendant's initial statement to Deputy Underwood, she named only the four listed above as being in her vehicle and never mentioned Cody. In its opening statement to the jury, the State described four people as being in defendant's vehicle, the four named co-conspirators. Further, when the deputy was recalled, he presented a confused account of Cody's prior statements.

error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

¶ 26. Defendant's next constitutional challenge arises from the judge's response to a question that witness Cody posed. Outside the presence of the jury, Cody asked the judge if he "was supposed to have a lawyer." The court responded: "Well if you have a lawyer here, that's fine, but I don't see where you've been accused of doing anything. I'll tell you right now that if you weren't being completely truthful when you originally testified and you correct anything that you may not have been completely truthful about you will *not* be prosecuted for perjury." (Emphasis added.)

¶ 27. Citing *Webb v. Texas*, 409 U.S. 95 (1972) (per curiam), defendant argues that this exchange amounted to intimidation preventing the witness from testifying freely thereby denying defendant due process. In *Webb*,

> the judge implied that he expected [the witness] to lie, and went on to assure him that if he lied, he would be prosecuted and probably convicted for perjury, that the sentence for that conviction would be added on to his present sentence, and that the result would be to impair his chances for parole.

*Id.* at 97. The Supreme Court found that "the unnecessarily strong terms used by the judge could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify." *Id.* at 98. The judge in *Webb* threatened the witness with a perjury charge and backed the threat by laying out the specific circumstances of punishment that the witness, because of his particular circumstances, would face. The court's words here were not analogous. The court below did not use "unnecessarily strong terms"

creating a likelihood of "duress"; its statement was not worded as threat, and the judge was explicit that if Cody corrected any incorrect statements, he would *not* be prosecuted for the offense.

¶ 28. Neither can defendant maintain her arguments of error under Vermont Rule of Evidence 605. Under Rule 605, "[a] judge sitting at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." V.R.E. 605. Defendant maintains that through his comments and questioning, the judge abandoned his impartiality and became a testifying witness for the State. It is true that this Court has concluded that "the testimony Rule 605 seeks to prohibit is not limited to statements formally given from the witness stand . . . but can be brought into the proceedings through other means." *State v. Gokey*, 2010 VT 89, ¶ 15, 188 Vt. 500, 14 A.3d 243. The Court found a violation of Rule 605 in *Gokey*, where a judge gathered evidence regarding a defendant's competency — the precise question before the jury — and brought that evidence into the proceedings. But this exception is a narrow one. Here the judge did not engage in outside fact-gathering nor did he take the stand as a witness. His questions and comments did not amount to testimony for purposes of Rule 605.[4]

¶ 29. Defendant also argues that the court abused its discretion by restricting inquiry into a June 2009 event which defense claimed was relevant to show evidence of bias, that the victim wanted to be with Amy, and that she was jealous of defendant. On cross-examination, defense counsel asked the victim:

> [Y]ou would say that it is in fact not the case that you had a de-

---

[4] Further, a court may "interrogate witnesses, whether called by itself or by a party." V.R.E. 614(b); cf. *Auger v. Auger*, 149 Vt. 559, 546 A.2d 1373 (1988).

sire to get back with Amy throughout this period up through January 30 and continuing through today?

The victim responded, "No," she "didn't have a desire to get back with Amy. [She] offered Amy rehab." Defense counsel pressed on:

So your testimony would be that the last week of June or thereabouts you didn't go to Lisa's home and pick up Amy and drive off with her?

The State made a general objection, which the court upheld on relevancy grounds. At the ensuing bench conference on the matter, the judge explained to defense counsel that he found the testimony irrelevant because it dealt with an event five months after the fight. Defense counsel countered that it was nevertheless relevant because the victim's interest had continued throughout this time. The court explained, "You haven't established that."

¶ 30. "We review trial courts' evidentiary rulings deferentially and reverse only when there is an abuse of discretion resulting in prejudice." *State v. Spooner*, 2010 VT 75, ¶ 15, 188 Vt. 356, 8 A.3d 469. The trial court's evidentiary ruling on this issue was proper. If the proffered evidence had a tendency to prove that the victim was interested in Amy at the time of the incident, then it would be relevant evidence of motive. However, the evidence referred to an incident occurring five months after the fight. Whether the victim was interested in Amy five months after the fight is irrelevant to her motive on the night of the fight. We find no abuse of discretion in this ruling, nor has defendant shown the she was prejudiced by it.

¶ 31. Defendant maintains that the court's exclusion of threatening text messages from the victim to defendant was likewise an abuse of discretion resulting in prejudicial error. Defendant attempted to present testimony from Diane, defendant's girlfriend at the time of trial, regarding threatening texts defendant had received from the victim. Defense counsel asked Diane, "Have you ever seen text messages from [the victim] to [defendant]?" Over the State's objection, the court allowed Diane to respond that she had. Diane could not give a date on which she saw the text messages, only that it was sometime "before the New Year." When defense counsel asked about the content of those messages, the State objected and the court sustained the objection for lack of foundation, concluding that the origin of the text messages would need to be shown to lay the foundation for a question regarding the messages' content. There was no error in this ruling. Further, defense cannot show that the exclusion of this evidence resulted in prejudice to defendant. Defendant had testified that she received threatening text messages from the victim prior to the date of the incident. She testified that the victim had told her "there was a landfill in Highgate with [her] name on it, and [her] son's name on it, and [her] bitch's name on it." She testified that she received these "[a]lmost on a daily basis." Evidence that defendant received threatening texts from the victim had thus been entered by other means. We do not believe corroboration by defendant's girlfriend that defendant received such texts sometime the year before the incident would so greatly sway the finder of fact as to warrant reversal.

¶ 32. Finally, defendant makes claims of error regarding the jury instructions. First, she argues that the court should not have instructed the jury on accomplice liability because the parties had agreed at the beginning of trial that it was not an issue and thus she lacked notice of the charge. Second, defendant contends that the accomplice liability instructions omitted essential elements.

¶ 33. Defendant made no objection on these grounds at trial. The only objection defendant made to the accomplice liability instructions was during the charge conference: "I would object to the accomplice liability [instructions] on the basis there was insufficient evidence adduced from witnesses to support that." The court found that the State had presented sufficient evidence to support the charge, and defendant made no further objections with regards to the accomplice liability instruction. "To preserve an objection to the jury instructions, defendant must object 'before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.' " *State v. Hinchliffe*, 2009 VT 111, ¶ 33, 186 Vt. 487, 987 A.2d 988 (quoting V.R.Cr.P. 30). "The primary reason for the rule is to give the trial court one last opportunity to avoid an error." *State v. Wheelock*, 158 Vt. 302, 306, 609 A.2d 972, 975 (1992). Defendant failed to object after the jury was charged. If a defendant fails to object to a jury instruction we review for plain error only, see *State v. Doleszny*, 2004 VT 9, ¶¶ 9-10, 176 Vt. 203, 844 A.2d 773 (stating that this Court will review objections to jury instructions only for plain error when objection was not made at trial after judge read preliminary instructions); however, defendant has failed to argue plain error on appeal. Thus these claims are waived. See *Hinchliffe*, 2009 VT 11, ¶ 34 (declining to address claim raised for first time on appeal where the defendant failed to argue plain error); *State v. Jackson*, 2008 VT 71, ¶ 7, 184 Vt. 173, 956 A.2d 1126 (same).

*Affirmed.*