*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-210

DECEMBER TERM, 2015

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Franklin Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Cory B. LaPlant | } | DOCKET NO. 716-6-13 Frcr |

Trial Judge: Martin A. Maley

In the above-entitled cause, the Clerk will enter:

Defendant appeals his conviction of attempted assault and robbery following a jury trial. On appeal, defendant argues that the court erred in admitting a witness's prior consistent statement and in denying defendant's motion for acquittal. We affirm.

Defendant was charged with attempted assault and robbery in violation of 13 V.S.A. § 608(a) following an attempted robbery of a grocery store. The following evidence was presented at trial. The store owner testified that at 3:45 a.m. a man wearing a dark hoodie with a zip-up skeleton mask entered the store. The man brandished a knife in his left hand and demanded money. The store owner refused and the man fled on foot. The owner followed the man out of the store and saw the man flee towards a red Jeep. The investigating detective testified that the store's surveillance video showed that the robber had a slight limp and his left arm was rigid. The detective testified that he was aware defendant had a limp and did not have use of his left arm, and that the man in the video resembled defendant's body type and build. The detective also knew that defendant's father owns a red jeep that defendant drives. When the detective went to defendant's house, he noticed that although the other vehicles had dew from the cool night, the windows on the Jeep were clear, indicating recent use.

When defendant was located the following day he was with two brothers, Michael and Travis, in their truck. Police seized the truck pursuant to a search warrant.

Both of the brothers testified at trial. One of them, Michael, testified about statements defendant made concerning the attempted robbery. In the context of his efforts to get his truck back, Michael had previously spoken with a detective about statements the defendant had made to him. At trial, Michael was reluctant to testify and expressed his dissatisfaction that the detective interviewing him had recorded their prior conversation. He initially stated that he heard around town that defendant was involved in the attempted robbery. He explained that he

did not have a clear memory of what happened due to two head injuries. After listening to portions of the recorded interview outside of the jury's presence for the purposes of refreshing his recollection, Michael stated that defendant admitted to him that he had gone into the grocery store with a knife to take money. Michael further testified that defendant said he was wearing a black, hooded, zip-up sweatshirt with a skull on it. He explained that defendant said he did not get any money because he was chased from the store, and he drove away in a red Jeep. Michael stated he did not want to testify because he was worried about people coming after him.

On cross-examination, defendant emphasized that Michael's motivation in speaking to the police was to get the seized truck returned to his brother. Michael denied the accusation that he had made up the conversation with defendant. The defense attorney also questioned whether Michael was high on drugs at the time he made the initial statement to police.

Michael's brother Travis also testified. He described a conversation in which defendant said that he, defendant, was going to be in trouble, and testified that he overhead defendant admit to Michael that he had attempted the robbery.

Prior to the close of the State's case, the state's attorney requested to admit portions of the recorded interview with Michael. Defendant objected that the statements were hearsay and inadmissible. The court ruled that a portion of the tape was admissible, not as substantive evidence of a prior consistent statement, but as "bolstering" evidence to rehabilitate the witness. In particular, the court admitted a small portion of one prior interview with Michael. The court explained the basis for admission as follows: "In any event I think it's fair for the state to bolster or rehabilitate their witness in some form and also rebut the suggestion that [Michael] was under the influence at the time. I think part of that would be for the jury to hear his statement." Thereafter the following portion of the interview with Michael was played for the jury:

> OFFICER MORITS: I will definitely talk with Sergeant Bushy.
>
> [Michael]: All right. And so what I know about that is that, this is your word. We'll pick up the truck afterwards?
>
> OFFICER MORITS: We're driving there right now.
>
> [Michael]: All right. So what I know about it is [defendant] he did do the robbery. He was wearing a black sweatshirt with a skull on it, with a zipped up skull.
>
> OFFICER MORITZ: Uh huh.
>
> [Michael]: He taped up his arm so his arm was actually straight because he has that fucked up arm, do you know what I mean?
>
> OFFICER MORITS: Yes.

2

[Michael]: He taped up his arm so it looked like he had a cast on. He taped it with some type of tape. Taped it with some type of tape. And he went into the store and told us he went in there and was demanding money. So he taped up his arm. Went in there demanding money. It was with a black knife. It had a swastika on it.

OFFICER MORITS: Okay.

[Michael]: And it was a knife that's got, you put your fingers through it and hold it. It had a swastika on it. And he did it alone. He parked his vehicle down the street and he ran back to his vehicle and drove off afterwards. And he, what did he do? So he went there, he went there, robbed the store and then ran away to the vehicle and he said he didn't get anything. I don't know if he lied about it or not. Was it an attempted or was it a successful robbery?

OFFICER MORITS: I'm not going to give you that information. You tell me what you know.

[Michael]: Okay. He said that it was, he said that it was, he didn't get no money.

The jury returned a guilty verdict. Defendant filed a timely notice of appeal.

On appeal, defendant argues that the court erred in allowing the State to play a portion of Michael's interview with police. We review the trial court's evidentiary rulings for an abuse of discretion. State v. Lampman, 2011 VT 50, ¶ 30, 190 Vt. 512. Further, we will reverse only when there is an error that results in prejudice. State v. Jackson, 2008 VT 71, ¶ 9, 184 Vt. 173.

Defendant asserts that the out-of-court interview was not admissible as a prior consistent statement because it did not meet the requirements of Vermont Rule of Evidence 801(d)(1)(B), which allows admission of a prior consistent statement that is "offered to rebut an express or implied charge against [the declarant] of recent fabrication or improper influence or motive." We need not address this argument because the court was clear that the interview was not admitted on that basis, and the State does not argue that we should affirm the trial court's evidentiary ruling on this alternative basis.

Defendant also contends that the statement was improperly admitted as a means to rehabilitate the witness. This Court has recognized a narrow circumstance in which a prior consistent statement may be admitted to rehabilitate a witness. In State v. Church, 167 Vt. 604, 605-06 (1998) (mem.), the defendant had introduced evidence that a child victim of sexual assault had recanted her allegations to a defense witness, and this Court ruled that the trial court properly allowed the State to then introduce evidence of a subsequent report by the witness to a

3

different person to rehabilitate the witness in light of the defense evidence. We emphasized that to be rehabilitative the statement must have "some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with [the witness's] trial testimony." Id. at 605 (quotation omitted). We further explained in State v. Hazleton, 2006 VT 121, ¶¶ 9, 12, 181 Vt. 118, that the doctrine is limited and the prior consistent statement statement "must particularly dispel, explain, modify or clarify the inconsistency." Id. ¶ 12.

Here, defendant asserts that the admission was improper because there was no particular inconsistency raised during cross-examination regarding the witness's statement that the police interview was meant to "contradict, explain, modify, qualify, dispel or in any way address or rebut." Id. ¶ 14.

We need not address whether the circumstances here fit the narrow parameters of the rehabilitation doctrine because any error in admitting the statement was harmless. See id. ¶ 15 (quotation omitted) (explaining that error in admitting evidence is harmless unless "there is a reasonable possibility that the evidence complained of might have contributed to the conviction"). To determine whether an error was harmless, we consider the importance of the testimony, whether it was cumulative, the presence of corroborating testimony, the extent of cross-examination, and the strength of the State's case as a whole. Id. ¶ 16.

The statements made in the interview were clearly cumulative to those made during the witness's testimony at trial. See Jackson, 2008 VT 71, ¶ 16 (holding admission of improperly admitted hearsay was harmless where it was cumulative of other testimony). The statements in the recorded interview were not necessary to establish any element of the crime and the portion of the interview admitted was brief. Defendant cross-examined the witness about the prior statements before the court admitted the tapes and had ample opportunity to impeach the statements.

Most significantly, the other evidence of guilt was compelling: Two witnesses, including Michael, testified in court to witnessing defendant admitting to the crime, including corroborating details. The detective described defendant's unique physical characteristics, including a limp and his inability to use his left arm, and tied those to the image of the fleeing perpetrator in the video. The owner of the store saw the perpetrator flee towards a red Jeep. The detective knew that defendant's father owns a red jeep that defendant drives, and observed that in contrast to the other vehicles in his driveway in the middle of that night, the windows on the red Jeep were clear, indicating recent use. In the face of this evidence, the tape of Michael repeating essentially the same statements during a prior police interview added very little to the evidence, and we are persuaded beyond a reasonable doubt that a jury would have convicted even without hearing the brief recorded statement.

Defendant also contends that the evidence submitted at trial was insufficient to support the verdict. In reviewing the denial of a motion for acquittal, "we consider whether the evidence, taken in a light most favorable to the State and excluding modifying evidence, is sufficient to fairly and reasonably support a finding of guilty beyond a reasonable doubt." State v. Brooks, 163 Vt. 245, 254-55 (1995). In evaluating the State's case, we include the testimony of Michael

even though defendant alleges that he was not credible because the question of a witness's credibility is a matter for the jury and not this Court to determine on appeal. See State v. Hammond, 2012 VT 48, ¶ 16, 192 Vt. 48. Here, the evidence, when viewed in a light most favorable to the State, showed: a man matching defendant's unusual physical characteristics entered the grocery and demanded money while brandishing a knife; the man fled in a car matching the description of defendant's father's vehicle; the vehicle was at defendant's home shortly after and had been recently driven; and defendant admitted in the presence of two friends that he had committed the attempted robbery. These facts are sufficient to support the verdict beyond a reasonable doubt.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice